————o————

WILBUR F. BRINCK Appellant, vs. JOHN P. COLLIER, Respondent.

1. *Land—Dedication of to public use—Alley in rear of premises—Taxes and repairs on, paid by owner—Use of by public in connection with proprietor—Intention to dedicate—User.*—To constitute a valid dedication of land to the public there must be a clear intention on the part of the owner to dedicate; which may be established in various modes, some of which are provided by statute and others by such acts or declarations *in pais* as are satisfactory evidence of such design; and there must be an acceptance of such dedication by the public, either by *user* for a length of time more or less according to circumstances, or by its adoption by the public authorities.

The owner of land in St. Louis on which certain dwelling houses were built, left a way through the rear of the premises and connecting with a public alley, wide enough for the passage of vehicles, which space was at all times used by the tenants for taking in coal, supplies and the like, and removing dirt, etc. The city never exercised control over the passage, or declared it to be a public alley; but the owner when occasion required had it closed up against the public. *Held*, that although the public had for many years frequently used the alley, as a matter of convenience in passing to and fro, such facts did not constitute a dedication of the alley to the public, or an acceptance of a dedication

by. the public. The use by the community in such case was not an adverse but merely a permissive use in connection with, and in subordination to, that by the tenants. Hence the length of time through which the way was so used by the public would be of no importance.

*Appeal from St. Louis Circuit Court.*

*Voorhees & Mason, and S. N. Taylor,* for Appellant.

*Glover & Shepley, and Hitchcock & Lubke,* for Respondent.

I. The question of the dedication of private property to public use depends on the circumstances of each particular case. (Smith vs. State, 3 Zabr., 723; Gamble vs. St Louis, 12 Mo., 617.)

II. To constitute such dedication, there must be first a plain, unequivocal intention to appropriate it to public use; (Becker vs. St. Charles, 37 Mo., 18; Pennington vs. Willard, 1 Rh. Isl., 93; Missouri Inst., etc. vs. How, 27 Mo., 211; Smith vs. State, *supra;* Badean vs. Mead, 14 Barb., 328; Gould vs. Glass, 19 Barb., 194; Dill. Mun. Corp., 602; 3 Ed.) second, an acceptance by user or otherwise, by the public; third, if user is the only proof of dedication, it must be shown to be adverse and not subordinate to the owner, and with claim of right long enough to amount to prescription. (Irwin vs. Dixon, 9 How. U. S., 10; Talbot vs. Grace, 30 Ind., 389; Smith vs. State, *supra;* Arstrott vs. Murray, 22 Iowa, 469; Dill. Mun. Corp., 604.)

III. The evidence negatives any such dedication.

IV. There is no evidence of any continuous or adverse user, such as is necessary.

V. In cities, to constitute an acceptance of dedication, there must be some action by the authorities from which a dedication may be presumed. (Detroit vs. D. & M. R. R., 23 Mich., 209–10; Holmes vs. Jersey City, 1 Beasley, 308; State vs. Carver, 5 Strob., 217; Baker vs. John, 28 Mich., 319; Irwin vs. Dixon, 9 Howard, U. S., 33; Page vs. Weathersfield, 13 Ver., 424; Blodgett vs. Royalton, 14 Ver., 288; Hyde vs. Jamaica, 27 Ver., 454; Holdane vs. Coldspring, 23 Barb., 103.)

VI. From the time this pass way was left open, the whole matter of opening alleys, etc., had been left with the city alone; and no burden of this sort can be thrown upon the city save by competent authorities. (Renard 184, p. 95; City Charter, Feb. 1843, Art. 3, § 2, clause 8, Art. 6, § 1.)

NAPTON, Judge, delivered the opinion of the court.

This was an action to recover damages from the defendant for building on an alley, claimed by the plaintiff to have been dedicated to the public use by defendant's father. There was a verdict for defendant and judgment accordingly. It appears in evidence, that George Collier, the father of the defendant, owned the entire block lying between Fourth and Fifth streets, and St. Charles and Locust in the City of St. Louis, and previous to 1842, had sold out all the block, except 100 feet on Fifth street by 127 on St. Charles street. Immediately south of his lot, at the corner of Fifth and St. Charles, Mrs. Graham since about 1845, owned up to Collier's line and the plaintiff is, or was, a tenant under a lease from Mrs. Graham.

About 1845, Collier put up some houses on the St. Charles street front, and between these tenements and the residence of Mrs. Graham he left an alley 12 feet wide on his lot, thus actually occupying only about 88 feet on Fifth street, with his buildings and their appurtenances. There was a fence on the north side of this alley separating it from the buildings and their appurtenances, and this alley was open from Fifth street to a public alley bounding Collier's premises on the east, running north and south through the block. Collier owned all the land north of the alley including the alley, and Mrs. Graham's lot was the only one immediately contiguous to the alley on the south side. There was evidence to show that this alley was mainly designed for the convenience of Collier's tenants in the six houses he built along St. Charles street, and that it was used by said tenants to haul wood and coal to their houses, and to remove ashes and other rubbish therefrom; and it also abundantly appeared that it was open, without gates, and used therefore by the public for a foot way and for carts whenever occasion presented, without objection from

Collier or his tenants; and that this user continued up to the removal of the buildings in 1870, a period of about twenty-five years.

At one time Mr. Collier, or his representatives, enclosed the ends of this alley with gates for a short time, to enable him to make some repairs on the buildings or fence adjoining it. After it became, by accumulations of mud, &c., inconvenient or difficult to pass over, he had the alley paved and kept the pavement in repair at his own expense. He paid taxes on it during all this time as a part of his lot. The city authorities never exercised or attempted to exercise any control or superintendence over it as a public alley—but taxed it as a part of Collier's property.

These facts were established by a great number of witnesses; but as they were grouped together in an instruction and thus passed on by the jury, it will not be necessary to give any details of the evidence; and this instruction presents really the only question in the case, and is as follows: "If the jury believe from the evidence that George Collier, prior to 1840, owned the whole of block 98 of the City of St. Louis, and shortly after that year conveyed the east half of said block fronting on Fourth street, to parties who commenced building thereon, and about that time there was an alley opened through said block extending north and south from Locust to St. Charles street, which alley was in 1844 or 1845, declared by the City of St. Louis to be a public alley; and about the year 1843, said Collier sold and leased to other parties the south-west portion of said block, leaving in himself a lot in the north-west corner of said block containing a front of about 100 feet on Fifth street, and running east to said alley; that in about the year 1845, said Collier erected on said last mentioned lot a row of houses fronting on St. Charles street, and extending from Fifth street to said alley; and that for the purposes of enabling the occupants of said houses to get their coal, wood and other supplies, and to remove their dirt, slops and ashes, he left open a way wide enough for the passage of vehicles in the rear of said houses through their whole extent, and that such way was at all

times used by said occupants for some or all of said purposes; that said way was always improved, paved and kept in order by said Collier and those claiming under him, and the City of St. Louis never exercised any dominion, care or control over the same, nor improved it or declared it to be a public alley; that from the time of the building of said houses by said Collier, the City of St. Louis always assessed said way as a part of said lot to said George Collier and those claiming under him for taxes, and they paid taxes thereon; that those claiming said lot under George Collier, about the year 1857 or 1858, fenced up said way at the east and west ends thereof, and prevented any entrance thereto for a week or more, then the jury are instructed that although they may find that for more than 20 years before 5th of May, 1870, other persons than the occupants of said house occasionally or often used said way as a matter of convenience in passing from Fifth street to said alley, running from Locust street to St. Charles street, or from said alley to said Fifth street, yet that no dedication of said way to public use has been shown as a matter of law from the facts above stated."

A number of instructions were asked by the plaintiff, but as they embrace propositions just the counterpart of the one given, an examination of the propriety of the instruction already quoted, will necessarily determine the question of law involved in the case.

There have been several cases determined by this court in relation to this question, viz: Gamble vs. the City of St. Louis, 12 Mo., 618; Stacy vs. Miller, 14 Mo., 478; Hannibal vs. Draper, 15 Mo., 634; Missouri Institution, etc., vs. How, 27 Mo., 211; Becker vs. St. Charles, 37 Mo., 14; Rutherford vs. Taylor, 38 Mo., 315.

An examination of these cases will show that while there is a concurrence in regard to the leading principles governing the subject, the application of these rules to particular cases depends very much on the peculiar facts of each case. To constitute a valid dedication of land to the public, there must be a clear intention on the part of the owner to dedicate, which may be established in various

modes, some of which are provided by statute, and others by such acts or declarations *in pais* as are satisfactory evidence of such design ; and there must be an acceptance of such dedication by the public, either by user for a length of time, more or less, according to circumstances, or by its adoption by the public authorities. Greenleaf says there must be the act of dedication and the acceptance of it by the public. "If accepted and used by the public in the manner intended, it works as an estoppel *in pais* precluding the owner, and all claiming in his right, from asserting any ownership inconsistent with such use. The right of the public does not rest upon any grant by deed nor a twenty' years possession; but upon the use of the land with the assent of the owner for such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." Again the same author says: "It" (the question of dedication) " is a question of intention, and therefore may be proved or disproved by the acts of the owner, and the circumstances under which the use has been permitted. The evidence of dedication of a way may be rebutted by proof of any acts on the part of the owner of the soil, showing that he only intended to give license to pass over his land, and not to dedicate a right of way to the public."

These general principles, though by no means easy of application, seem to be well settled by repeated adjudications, both in England and the United States ; but a review of the cases, or even a reference to them by their titles, would be superfluous labor, since they may be found in the text books on this subject and are cited in several elaborate opinions referred to in the briefs of the counsel in this case.

I will refer only to one or two cases which in their facts seem particularly analagous to the present:

The case of Irwin vs. Dixon (9 How., 10), is in many respects like the one now under consideration. In that case, there was an application for an injunction to prevent the defendants from building on what was assumed to be a public highway, and the main ground of the relief sought was based upon an alleged dedication to the public. There had been a use of the

ground by the public for more than thirty years, as a highway, and this user was claimed to be a dedication by the owner. But the court declared the law to be, that this user, in order to constitute a dedication, must have been made under such circumstances as to indicate an abandonment of the use exclusively to the community.

The court held, that a dedication must rest on the clear assent of the owner—to be proved by a deed, or unsealed writing, or by acts inconsistent and irreconcilable with any construction except such assent;—and the court held, that the mere fact of user by the public did not constitute a dedication where such user was merely incidental to the convenience of the owner, who would not be captious in preventing others from traveling the same road so important to himself. The fact that the owner continued to pay taxes on it as private property, and that the city continued to assess taxes on it to the owner; that the owner made repairs on it, when needed for their own use and advantage, instead of its being repaired by the city, as was done with public highways—was regarded as conclusive, that neither the owner or the public considered the road as dedicated to the public.

The doctrine in 3 Kent's Com., 444, that the use must be adverse to the owner, and that the use must be exclusive, is referred to and sanctioned.

The case of The People vs. Beaubien (2 Douglass, 269), was an indictment for obstructing a public highway; but the question turned altogether upon the point whether there was a highway by dedication, and upon this point a multitude of English and American cases were reviewed.

The proprietor had laid out an addition to the City of Detroit, and on his plat had marked a "street leading to the burying ground," but the city had never recognized this street, and had in fact constructed other streets leading to the cemetery; and the court held, without deciding upon the rights of purchasers of lots according to the plat, that there was no dedication by estoppel *in pais*, so far as the public were concerned, because the Common Council of Detroit, who had charge of the streets of that city, and the power of opening or laying

out new ones, had never accepted or adopted this as a street, and therefore, conceding that the intent to dedicate was clear, there was no acceptance and no such user of a street as would consummate the dedication.

The same principle is distinctly asserted in Page vs. Weathersfield (13 Verm., 429). There the court declares that a public road is one laid out by proper authority, and where there is no formal and regular designation of such road, its existence may be shown by its recognition by the public authorities, such as causing repairs to be done on it or authorizing the surveyors to collect and expend the highway tax on it; but the Chief Justice says: "I know of no way in which an individual can lay out a public highway for his own benefit and compel the town to accept it as such." And this case was quite analagous to the present, though relating to a county highway, and not to a street or alley in a city, as will appear from the concluding paragraph in the opinion, which is as follows: "The owners of the mill opened a passage from the highway to their mill, and have used it for the benefit of themselves and their customers ; have repaired it from time to time, and the town have done no highway work thereon. The selectmen could neither discontinue it as a passage, nor shut it up, nor control it in any way. It commenced at the highway and terminated at the mill. Whenever the owners of the mill have no further use for it, they may fence it up without the consent of the selectmen or consulting them, and while they want to use it for the same purposes as heretofore, the selectmen cannot interfere with their right to do so. No one of the numerous authorities read, affords any countenance to the idea that this passage was a public highway which the town were bound to repair, or for the insufficiency of which they were liable to the suit of an individual injured."

Assuming these principles to be correct, we have no difficulty in saying, that upon the facts found by the jury in this case, there was no dedication by the proprietor, nor any acceptance of such dedication by the public, had there been shown an intention to dedicate it by the proprietor.

All the facts proved are entirely consistent with an intention on the part of Collier to retain his rights of property in the way opened; but some of them are entirely inconsistent with the hypothesis of an intention to dedicate.

His declarations to the witness, Bredel, and his subsequent acts, continued during his life-time, of paying taxes on this ground and keeping the way in repair at his own cost, and subsequent similar acts by his successors, with occasional assertions of exclusive right to use the same, whenever their proprietary rights rendered it necessary or convenient, are all inconsistent with the hypothesis of an abandonment of title to the public, and the occasional or constant use of the way by the public in connection with this use by the proprietor and his tenants, is not such an user as indicates an acceptance of a dedication. There was nothing adverse in such user, nothing more than a permissive use, or what is termed a license.

The case of Gamble vs. The City of St. Louis, (12 Mo., 620) which is relied on as authority for a dedication in the present case, was different in its facts in several important particulars. There, the alley ran entirely through the block, and was adopted by all proprietors of lots on either side, of whom Gamble was only one. The city authorities reported it as a public alley and took charge of its improvement and repairs. There could be no question of an acceptance by the public of the way as an alley, and whatever might have been the original design of the proprietor, who complained, and of the other proprietors who accepted the plan and adapted their improvements to it, its abandonment would obviously have interfered both with public convenience and private rights. In the case now under consideration, there was already a public alley through the entire block, paved and kept in repair by the city authorities, and it may well be questioned, as it was in the Vermont case cited, whether the city can be burdened with the expense of keeping open and repairing any additional number of alleys or streets which the convenience or caprice of an owner might suggest.

In dedications as in all other implied contracts, there must be the assent of two parties—the proprietor of the ground

and the public—and where the public is represented by duly constituted agents, invested with full power to determine upon the propriety or necessity of a proffered dedication, the dissent of such authorities must be a very material fact in determining whether the proprietor has been divested of his title or not.

In the Beaubein case referred to, there was no question of the intent of the proprietor to dedicate—but that intent was frustrated by the action or non-action of the city authorities of Detroit—who were invested with power to determine what highways they would recognize as streets, and be at the expense of paving, lighting and sewering.

In this case the facts show no intention to dedicate, and no such user by the public as would imply a loss of title in the owner. The length of time during which the way was used amounted to nothing, since the user was subordinate to the proprietary rights. A lot in a city might be left unimproved, and roads through it diagonally might be used for any length of time, but such user would not be claimed as establishing a street. And so in this case the user was manifestly subordinate to the rights of the proprietor, and not adverse to his ownership.

The judgment is affirmed, the other judges concurring.