LANDIS, *Appellant*, v. HAMILTON.

1. **Dedication by acts in pais : EVIDENCE.** In a case where, without judicial proceeding, or compensation, or solemn form of conveyance, it is sought to establish *in pais* a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent; and the conduct and acts relied on to establish the intent should be inconsistent and irreconcilable with any construction except such consent; nor must there be declarations and acts by the owner inconsistent with the dedication.

Tested by these rules, the evidence in this case fails to show a dedication.

2. **Practice.** Even where there is some evidence which might justify

the trial court in submitting the case to the jury, yet if the whole evidence taken together is such that if it had been submitted and the jury had found a verdict for plaintiff, it would have been the duty of the trial court to order a new trial, this court will not reverse for a refusal so to submit.

3. **Dedication**: ACCEPTANCE. To constitute a dedication of property to public use there must be an acceptance by the public. This may be evidenced by user for a long period, or by its official recognition by the constituted authorities. The user should be such as to indicate that the enjoyment by the public is exclusive and not subordinate or incidental to the convenience of the owner.

4. **Estoppel.** It is not always essential to the creation of an estoppel that the person should be a party to the record. One who instigates and promotes litigation for his own benefit by employing counsel or binding himself for the costs and damages, will be bound by the litigation or procedure as much as the party to the record.

Thus, where a city, at the request of certain citizens, instituted legal proceedings to condemn land for a street, the citizens agreeing to pay all damages that might be assessed, and afterward the city declined to pay the damages that were assessed, and in lieu thereof passed an ordinance declaring that the land sought to be condemned "be abandoned by the city." *Held*, that the citizens who instigated the proceedings were concluded from asserting a prior dedication of the same land for public use as a street.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*Bennett Pike* and *Doniphan & Reed* for appellant.

*Strong & Mosman* and *Spencer & Hall* for respondent.

PHILIPS, C.—This action was instituted in 1875 in Buchanan circuit court and tried on change of venue in Andrew circuit court. The petition stated in substance that Fourth street was a public street in the city of St. Joseph, forming the eastern boundary of block 40; that James Hamilton, the father of defendants, owned lot 12 in this block in 1856; that he dedicated to the public in his lifetime ten feet of the eastern end of this lot adjoin-

ing and cornering with Fourth street, and that said ten feet were accepted by the public and city as a thoroughfare; that in 1860 James Hamilton died, and the defendants inherited said lot; that said ten feet were used as such thoroughfare until 1869, when the defendants built on said lot a three story brick house covering said ten feet, "thereby obstructing the said street and preventing the use thereof by the public;" that afterward the plaintiff, who owned lot 10 in said block, and some sixty-five feet distant from lot 12, built a business house on his lot. The petition then alleged that the plaintiff was damaged by the erection of said house by defendants, in that it greatly impaired the value and desirableness of his place of business; that it affected the yearly rental of his property, and prayed judgment for $5,000 damages.

The answer took issue as to the alleged dedication of said ten feet, and as to the obstruction and damages. It then pleaded specially that in 1866 the plaintiff presented a petition to the city council of St. Joseph praying that said ten feet be condemned to public use; that in connection therewith a proposition was submitted by plaintiff and others to indemnify said city against damages consequent upon such condemnation, and entered into a bond to that effect; that the city council accordingly passed an ordinance so condemning said ten feet. Defendants protested against the procedure. Notice was duly served on defendants by said city. A jury was empanelled to assess damages, who assessed defendants' damages at $3,000. The council refused to affirm this assessment, and ordered a new jury, which assessed the damages at $500. Defendants appealed to the circuit court, where the damages were assessed at $3,000. The city appealed to the Supreme Court, where this judgment of the circuit court was reversed, on the ground that the city council had no authority to order the second jury and assessment; that the Supreme Court held that if the city was dissatisfied with the first assessment of damages, it might appeal therefrom

or abandon the ground; that thereupon defendants called on said city council to pay said $3,000, or to abandon said ten feet of ground, as they desired to build thereon. Thereupon, April 12th 1869, the city passed an ordinance abandoning said ground in accordance with the petition of defendants. Defendants relying thereon, and believing that neither the plaintiff nor the city could further claim said ten feet as appurtenant to said street, built thereon a house of the value of $8,000, without protest and with full knowledge on the part of plaintiff and the city.

The essence of plaintiff's evidence to support the alleged dedication, was that two or three parties owning some of the lots north of lot 12, between 1857 and 1860, proposed to the city council to give ten feet off the end of their lots to widen said street, which the witness says was assented to, but no ordinance was passed nor was there any record evidence thereof. After this the city engineer marked out the line of the curbstone for the sidewalk, which was about three feet beyond where the ten feet in question extended. Sidewalk was to be twelve feet wide. This curbstone extended the whole front of the block. When the engineer was about the running of this line James Hamilton was seen there with him, but what he said does not appear. He had the curbing done. Afterward he built a temporary house on the lot, and set it back about ten feet. One Allen testified that in 1865 Mr. Hamilton stated to him that he had given ten feet to widen Fourth street, and that it made his lot more valuable. This ten feet seems to have been used for the sidewalk up to the time of Hamilton's death in 1865.

On the other hand, defendants' evidence showed that Hamilton stated, angrily, to Donnell, who was trying to get the assent of the lot owners to give to the city the ten feet, that he never would consent. The records and the papers in the condemnation proceedings were put in evidence in support of the answer.

Plaintiff also offered evidence tending to show that

his store-house was not so desirable as a business stand on account of defendants' house obstructing the view, and possibly injured its rental value.

The plaintiff asked the following instructions:

1. No particular form is necessary in the dedication of land to public use. It may be made by the owner thereof without deed or writing, all that is necessary being the giving up by the owner of the use and occupation of the land to the public, with the intention that the public shall have the permanent and exclusive right of such use, and common use and occupation by the public. In order to determine whether such intention exists in this case, the jury have a right to take into consideration all the facts and circumstances of the case in proof, touching the question of intention to dedicate on the part of Jas. Hamilton, Jr., and any state of facts which would have bound Jas. Hamilton, Jr., will bind these defendants.

2. If the jury believe from the evidence that Jas. Hamilton, Jr., in March, 1856, purchased lot 12, block 40, in the city of St. Joseph, and that while such owner, he dedicated, within the meaning as given in the first instruction, ten feet from the eastern end of said lot, to the public use as a thoroughfare, and the same was accepted by the public as a part of such thoroughfare, and that these defendants, as the heirs of said Hamilton, and owners of said lot after his death, built a three story house, extending over and across said strip, so as to prevent and obstruct the use thereof by the public, and that plaintiff's store-house, situated on lot 10 of said block, has depreciated in rental value in consequence thereof, then they will find for the plaintiff, and assess his damages at such sum, not exceeding $5,000, as the evidence shows plaintiff has been injured by such depreciation.

3. The jury must be satisfied, from the evidence, that there was an acceptance by the public of the said strip of land, so, as aforesaid, intended to be dedicated by said Jas. Hamilton, Jr. But the acceptance need not be shown by

positive formal ordinance of the city, but may be shown by user on the part of the public or the city, or by care thereof and control thereover by the public authorities of said city in such way as to evince an intention on the part of the city to accept and recognize the said ten feet in question as a permanent part of said street.

4. If the jury should believe that the facts and circumstances, as detailed in evidence, show a dedication of ten feet from the east end of said lot 12 to the public use, as a part of Fourth street, by Jas. Hamilton, Jr., the owner in fee thereof, then they are instructed that any subsequent proceeding on the part of the city to have the same condemned, as introduced in evidence, could not and did not revest the said Hamilton or his heirs with the right thereto or the control thereover.

The court gave the first three of said instructions, and refused to give the fourth instruction as asked, but gave the same with the following modification :

" But said proceedings for condemning said ten feet, together with the ordinance of the city, read in evidence, entitled 'An ordinance abandoning a part of lot 12 in block 40, original town, now city, of St. Joseph, Missouri, near the corner of Fourth and Edmond streets,' is a recognition of the right of defendants to said ten feet, and defendants in building on said ten feet, after the adoption of said ordinance, did not commit a nuisance for which plaintiff can recover."

To which opinion of the court refusing said fourth instruction as asked, and giving it as modified, the plaintiff excepted. The court then, at its own instance, gave the following instruction :

If the jury believe from the evidence that about the year 1866, defendants claimed the ten feet in controversy as their own property, and the city, at the request of the owners of property in said city, instituted proceedings to condemn said ten feet of ground for and as a part of Fourth street, for public use, and said proceedings resulted in the

assessment of damages in favor of defendants, as the owners of said lot 12, in the sum of $3,000, and that said city refused to pay said damages, and that defendants requested said city to abandon the said ten feet of lot 12 to them, and that thereupon the city did adopt the ordinance in evidence, in relation to the same, entitled "An ordinance abandoning a part of lot 12 in block 40, original town, now city, of St. Joseph, near the corner of Fourth and Edmond streets," such ordinance is an abandonment of the claim of the city to said ten feet as a part of the street, and would authorize defendants to enter upon the same and erect improvements thereon; and if you further find from the evidence that defendants erected the building complained of after the adoption of said ordinance, without any objection or interference on the part of the city authorities, the erection and maintenance of said building on said ten feet of ground does not constitute a nuisance for which plaintiff can recover, in causing injury to his property built after the said ten feet was so abandoned, and defendants had built their house on the same, and you should find for defendants.

Thereupon plaintiff took a non-suit, with leave to set the same aside. And, after an ineffectual effort to obtain a new trial, brings the case here on appeal.

Counsel have discussed, with much learning and force, many interesting questions incidentally connected with this case. They have not been neglected nor evaded. But there are one or more governing principles of law pertinent to the facts of this case which render discursive discussion unnecessary.

The plaintiff seeks to recover from the defendants damages as in case of levying a nuisance, for erecting a 1. DEDICATION BY house on ground which plaintiff admits once ACTS IN PAIS: evidence. belonged to defendants' father. His right to maintain the action depends on an alleged dedication by the ancestor to the municipal government of St. Joseph. In a country like ours, where landed estates are allodial,

the law is justifiably jealous of the methods by which such estates are taken away from the private citizen and put into the control of an intangible public, state or municipality. This feeling or thought finds its best expression and safeguard in that provision of our organic laws which forbids the taking of private property, even for public use, without just compensation to the owner. In a case, therefore, where, without judicial proceeding or compensation, or solemn form of conveyance, it is sought to establish *in pais* a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent. *Irwin v. Dixion*, 9 How. 30, 31; *Brinck v. Collier*, 56 Mo. 164, 165. The conduct and acts relied on to establish the intent of the owner should be "inconsistent and irreconcilable with any construction except such consent." *Irwin v. Dixion, supra,* and authorities cited. Nor must there be declarations and acts by the owner inconsistent with the dedication.

Tested by this standard the facts relied on by plaintiff were scarcely sufficient to justify the trial court in submitting the case to the jury. It appeared that Donnell and others were endeavoring to secure a concession of the ten foot frontage on the street to the city. Is it not remarkable that plaintiff could not prove by Donnell, whose deposition was taken, that Hamilton joined him in the application or directly consented thereto? Why did he not ask him to join or consent? When others were moving in the matter there is not one word of Hamilton's co-operation. This is significant to my mind.

Hamilton, it is asserted, was present when the engineer made a survey of the curbstone line. What he said or why he was there, whether protesting or acquiescing, all is left to conjecture. Who sent this engineer there? Was it the city or the interested parties seeking the widening of the street? Is it a safe rule of law to suspend the title of land upon such conjectures?

36—77

It is said that Hamilton did not build his temporary house to the outermost verge of his lot. Was that inconsistent with an assertion of ownership over this ten feet? Had he not a right to place his house or his fence on any part of his own lot he chose? Forsooth, in the condition of affairs existing in our towns for the period running from 1860 to 1865, the owner, with a mere temporary structure on his lot, did not occupy the utmost limit of his lot, and indulged the public in its use as a pass-way for a few years until he needed it for his exclusive use, shall his title to the part, *nolens volens*, be appropriated perpetually to the public accommodation?

True it is, a witness says that in 1865 Hamilton said he had given the city ten feet of this lot. The unsupported rehearsal after a lapse of twelve years of the one utterance of a man long since dead, should be most cautiously received, and ought not to support a verdict taking away title to land, especially when other occurrences contradict the force if not the existence of the fact.

If this was sufficient to have justified the submission of the issue to the jury, there is other uncontradicted evi-

2. PRACTICE. dence in the case that should have persuaded the trial court to grant a re-trial had the verdict gone against the defendants. In such a case this court will not reverse the judgment when for the right party.

Defendants' evidence showed contrary statements of Hamilton protesting to Donnell that he would not concede this ten feet of ground, corroborated by like statements to the defendants. Superadded to this is the admitted and indisputable act of the plaintiff and the adjacent interested lot owners in 1866 recognizing the necessity of procuring a divestiture of Hamilton's title to this ground by condemnation proceedings. This shows that this plaintiff and the public felt, in the language of the court in *Irwin v. Dixon*, *supra*, p. 30, that the acts and words of Hamilton were insufficient, because they were " equivocal or ambiguous on the subject."

There is, too, another important element in the constitution of a dedication of property to public use. There **3. DEDICATION: acceptance.** must be an acceptance by the public. This may be evidenced by user for a long period or its official recognition by the constituted authorities. The user, essential to indicate such acceptance, should be such as to indicate that the enjoyment by the public is exclusive ; that it is not subordinate nor " incidental to the convenience of the owner, who would not be captious in preventing others from traveling the same road so important to himself." *Brinck v. Collier,* 56 Mo. 166. Certain duties, responsibilities and rights attach to the ownership of real estate by a municipal corporation. Therefore it is important—of the very essence of self-protection—to these municipal governments, that their assent should be had before the burden is thrust upon them. And in view of the fact that plaintiff proved that about 1860 Donnell and others had asked the council to accept the offering, is it not significant that no acceptance appears of record ? Napton, J., in *Brinck v. Collier, supra,* clearly intimates his approval of adjudicated cases holding that such acceptance ought to be manifested in a case like this by the official act of " the duly constituted agents."

But what is more conclusive still against any acceptance by the city, is the fact that in 1866 by public ordinance the council recognized this ten feet of ground as the property of these defendants, and entered solemn judicial proceedings, on due notice to these defendants, to condemn the ground in order that the public might obtain its use. For three years the city held defendants in court at great expense in a struggle to wrest this very title from them. The basis of this proceeding under the city charter was, that the ten feet of ground was private property. That struggle ended in this court. 43 Mo. 282. Pursuing a suggestion of the court in that decision, the defendants made request on the city council to either pay the amount assessed by the jury, or abandon the matter. Thereupon

the council adopted a formal ordinance declaring "that the part of lot 12, block 40, sought to be condemned for the purpose of opening and widening of Fourth street, be abandoned by the city," etc. It is not material to the determination of this appeal to decide the question discussed by counsel as to whether this in effect did not amount to a vacation and surrender by the city of this portion of Fourth street.

There can be no question of the proposition that if the city itself were before the court, immediately, asserting 4. ESTOPPEL. title to this ten feet through a dedication by defendants' ancestor, the whole condemnation proceedings and ordinances of the city would constitute a complete estoppel against it. *Wright v. The Town of Butler*, 64 Mo. 165. Is not the plaintiff likewise estopped? To induce and promote the condemnation proceedings he signed the following paper:

"St. Joseph, Mo., July 5th, 1866.

*To the Honorable Mayor and City Council, St. Joseph:*

We, the undersigned, in view of the resolution passed at the last meeting of your honorable body appointing a committee to draw up an ordinance condemning certain property on Fourth street, provided the city should be indemnified against expense, would respectfully represent to your honorable body that we will cheerfully donate to the city that part of our respective lots already lying in the pathway, and promise to pay our *pro rata* of the expense the city may be at in condemning property not donated."

Accordingly, on the 18th day of August, 1866, he joined in a bond under seal for $5,000, to the city, with the following condition: "The condition of the above bond is such that, whereas, the city of St. Joseph has adopted an ordinance to widen Fourth street, between Felix and Edmond streets, and on the west side of Fourth street, ten feet being taken off the east end of lots fronting on Fourth street; and whereas, property on said street has to be condemned in order to carry out said ordinance, and as the

widening of said street will be an advantage to the under-signed; Now, therefore, if the undersigned will well and truly pay off and satisfy all such damages as may be as-sessed in the condemnation of said property, then the bond to be null and void, otherwise to be and remain in full force and virtue in law."

It is not always essential to the creation of an estoppel that the person should be a party to the record, but one who thus instigates and promotes the litigation for his benefit by employing counsel, binding himself for the costs and damages, will be bound by the litigation or procedure as much as the party to the record. *Stoddard v. Thompson*, 31 Iowa 80; *Lovejoy v. Murray*, 3 Wall. 1, 18. "Where one is bound to protect another from a liability," he is bound by the litigation, provided he had notice and oppor-tunity to control and manage the case. *Strong v. Phoenix Ins. Co.*, 62 Mo. 295. The plaintiff was bound to protect the city, he had notice, he had opportunity to control the proceeding. He could have withdrawn his bond of in-demnity and forced a discontinuance of the action; but he let it remain. The proceeding, as shown by his petition and bond, was for his immediate benefit. He thereby put the defendants to great trouble and expense on his direct admission that this ground was defendants' private prop-erty. Upon the abandonment by the city, the defendants erected a large and costly edifice on this lot. The plaintiff did not build until after the defendants had. And now, after standing by for five years, he comes with this action asserting a dedication and a nuisance. He cannot main-tain the action. The judgment of the circuit court should, in my opinion, be affirmed. MARTIN, C., concurs; WINS-LOW, C., absent.