Rosenberger v. Miller et al.

---

EMIL ROSENBERGER, Respondent, v. J. H. MILLER et al., Appellants.

St. Louis Court of Appeals, March 12, 1895.

1. **Highways**: VOLUNTARY DEDICATION BY MATTER IN PAIS: ESSENTIAL ELEMENTS. When matter *in pais* is relied upon to establish the voluntary dedication of a highway, the evidence should leave no doubt that the owner fully intended to consent to the dedication; and it must furthermore show an acceptance by the public.

2. ———: ———: ACCEPTANCE BY USER. When user is relied upon as proof of acceptance in such a case, it is not necessary to establish the duration of it for any special time, but its continuance must be shown for such time and under such circumstances that the public accommodation and public rights would be materially affected by an interruption of the enjoyment.

3. ———: ———: TIME OF ACCEPTANCE. Such acceptance may take place at any time before the withdrawal by the owner of his proffered dedication; but the conveyance of the land by the owner without reservation prior to that acceptance amounts to such withdrawal.

4. ———: USER ADVERSE TO OWNER. But, to establish the existence of a highway by user without regard to any intention of dedication on the part of the owner, the user must be adverse and not permissive only, and it must continue for the length of time necessary to bar an action for the recovery of the possession of real estate.

5. **Injunctions**: TRESPASS. Injunction is, under our statute, a proper remedy to restrain the threatened wrongful taking of land for public uses.

6. **Practice, Trial**: ACTIONS IN EQUITY: REJECTION OF VERDICT OF JURY. When issues are submitted to a jury in an action in equity, the trial court is not bound by the verdict, but may disregard the same, if it chooses.

*Appeal from the Montgomery Circuit Court.*—Hon. E. M. Hughes, Judge.

AFFIRMED.

*Robert Shackelford* and *James D. Barnett* for appellants.

*H. W. Johnson* and *Thos. J. Powell* for respondent.

BIGGS, J.—This is a petition for an injunction to restrain the appellants from tearing down the plaintiff's fence. The facts, about which there is no dispute, are these: On the seventeenth day of July, 1893, the plaintiff was, and for several years had been, the owner of the east half of lot number 2 of the northwest quarter, section 5, township 57, range 4 west, and L. P. Miller was the owner of the adjoining land in the northeast quarter of the section. In 1881 the plaintiff's land was owned by William Clark, and the Miller tract belonged to nonresidents. Both tracts are covered with brush and timber, and were unfenced until the spring of 1893. In February, 1881, the county court, upon petition and notice and upon the recommendation of the road commissioner, established a public road thirty feet wide along the dividing line between the two tracts. The starting point for the road is twenty and forty-three hundredths chains north of the northern line of section 5, extending south to the northeast corner of the northwest quarter of section 5, being

the northeast corner of plaintiff's land, running thence south along the line between the northeast and north-west quarters eleven and fifty hundredths chains; thence twenty-five degrees west eleven and fifty hundredths chains; thence south five and fifty hundredths chains, and thence in a southerly direction to the northern line of the adjoining county. This is the location of the road, as stated in the petition, the report of the road commissioner, and the final order of the county court establishing the road.

In the spring of 1893 the plaintiff and Miller, being desirous of fencing up their respective lands, had the line of the road re-surveyed according to the order establishing it, and they constructed their fences accordingly. At that time the plaintiff and Miller were on friendly terms. Afterward they disagreed about some business matters, and Miller then began a controversy about the true location of the road. He contended that the road, as located by the road over-seer, was inside of plaintiff's inclosure. The plaintiff declined to move his fence, and in July, 1893, Miller had the county court to make an order for the road overseer of the district to remove all obstructions in the public roads of his district. Acting under this order and at the instigation of Miller, the appellant Dryden, who is the road overseer of the district, on the seventeenth day of July, 1893, with the assistance of a force of men, tore away the plaintiff's fence. On the following day the plaintiff rebuilt it, and while his hands were at work, Dryden, who was accompanied by his codefendant J. H. Miller, ordered the work to stop, and declared his purpose to summon another posse on the following day, and again remove the fence. Thereupon the plaintiff commenced this proceeding against Dryden, J. H. Miller, L. P. Miller, and

one or two other persons who had assisted in removing the fence the day before.

Whether or not the plaintiff's fence obstructed a public road, was the real question in dispute, and concerning it the conflict in the evidence is very sharp. The court submitted that issue to the jury, and they found that a portion of the plaintiff's fence was built on the road as located by the road overseer. The court set aside the finding, and entered a decree dismissing the proceedings as to all parties except Dryden and J. H. Miller. As to them the temporary injunction was made perpetual. They have both appealed. Dryden contends that the weight of the evidence shows that the plaintiff's fence obstructs a public highway, and Miller asserts that the evidence is insufficient to connect him with the alleged trespass.

There is no pretense that the road, as contended for by appellants, is the road which the county court ordered to be opened, but they assert that the road overseer, in opening the road, disobeyed the order of the court and located it on Clark's land, west of the route therein indicated; that this was done by the consent and request of Clark, and that Clark thereby dedicated the land upon which it was located to public use, and that the road was accepted by user and the expenditure of public money for its improvement, thereby making the dedication complete. This puts the burden of proof on the appellants.

Where there has been no condemnation proceedings and no conveyance and no compensation, and it is sought to establish by matter *in pais* a divestiture of the title to land in favor of the public, the evidence should leave no doubt that the owner fully agreed and intended to consent to the dedication. *McShane v. City*, 79 Mo. 41; *Landis v. Hamilton*, 77 Mo. 554; *Brinck v. Collier*, 56 Mo. 164; *City of Kansas v.*

*Ratekin*, 30 Mo. App. 416; *Irwin v. Dixion*, 9 How. 10; *Stacey v. Miller*, 14 Mo. 478; *Baker v. Vanderberg*, 99 Mo. 378; *Missouri Institute v. How*, 27 Mo. 211; *Becker v. City*, 37 Mo. 13. William Clark testified that he was present at the time the road overseer opened the road; that when the latter reached a point about ten chains or about half way down the line dividing the two forties, he instructed him not to follow the located route, but to bear somewhat to the west, and thus avoid a ravine and a marshy place; that the land was, worth but little at that time and that he preferred to give that much additional land and have the road located on better ground. His evidence leaves no question about his intention to consent to the change in that part of the road. As to other changes (if there were any), there is no evidence that he gave his consent.

But a dedication of land to public use is not complete by the mere act of the owner. The public use of land carries with it certain burdens and responsibilities, which the public can not be forced to assume against its will. Hence, in every voluntary dedication there must be an acceptance by the public. This may be manifested either by user, or, as in the case of a public highway, by the expenditure of public money for its improvement by the constituted agents of the county. *Brinck v. Collier, supra; Landis v. Hamilton, supra; Vossen v. Dautel*, 116 Mo. 379; *Becker v. City, supra.*

Where the user is disconnected with any act of the owner manifesting an intention to dedicate, the use must be adverse, and not permissive merely, and must continue for the length of time necessary to bar an action to recover the possession of real estate. *State v. Young*, 27 Mo. 259. But where the acts of the owner show clearly an intention to dedicate, then no special time of user is necessary, but it must be for such a

length of time and under such circumstances "that the public accommodation and public rights might be materially affected by an interruption of the enjoyment." *Brinck v. Collier, supra.*

Now, let us look into the facts. The evidence leaves the exact location of the road uncertain, as it was cut out and located by the road overseer, commencing at the northeast corner of plaintiff's land and extending south to a point about half way along the east side of the forty acres. The road had been neglected for so long, and the brush had grown up to such an extent, that it was impossible to locate it with certainty. The evidence for the appellants tended to prove that the road was cut out entirely on the plaintiff's land from twenty to thirty feet west of the dividing line. The plaintiff's evidence was to the effect that it was impossible, for the reasons above stated, to determine the exact location. If the appellants' position be conceded, still, there has been no divestiture of title of that portion of the roadbed, for the reason that there is no evidence that Clark agreed to give that portion of the right of way. The location, if thus made, was made by mistake, and, therefore, the holding as against Clark, and also as against the plaintiff, his immediate grantee, was permissive and not adverse. *Autenreith v. Railroad*, 36 Mo. App. 254. Therefore, under any view of the case, the action of Dryden in taking away the plaintiff's fence along that portion of the road was unauthorized, and, to that extent, at least, the decree of the circuit court must be upheld, unless the plaintiff has mistaken his remedy.

Touching the question of user or acceptance, which is only applicable to that portion of the road south of the point of divergence as testified to by Clark, the evidence is voluminous and irreconcilable. That of the appellants tended to prove that the road as cut out by

the road overseer was used by the public continuously since the spring of 1881, and that in 1889 the road overseer improved the road by cutting out the brush that had grown up on the right of way, and that he constructed out of poles one or two small bridges toward the south end of the forty acres. All of the witnesses, however, concurred in the fact that the road was used but little, and that the main travel had been along what is known as the ridge road, which was located farther west.

On the other hand, the plaintiff's evidence was to the effect that there *was no road*; that the brush had grown up so that it was almost impossible to get along with a wagon; that there was a mere trail through the woods which was used by persons traveling on horseback, and that with but little expense a good road could be made on the route established by the county court. These facts were established by the evidence of many witnesses, and it is manifest that we ought not to disturb the finding of the trial judge on that question. Even under the evidence for the appellants it is not so clear that the user is such as to make a complete dedication. Under the rule declared by Judge NAPTON in the case of *Brinck v. Collier*, *supra*, the user must be such that its discontinuance would seriously discommode the public. It is undisputed that a good road could be made on the true location with but little expense. We, therefore, conclude that the finding of the circuit court, that there was no acceptance by user, is justified by the evidence.

There was no work done on the road by the county authorities until 1889. Some authorities are to the effect that the act of acceptance must be within a reasonable time, while others hold to the view that it may be at any time before the dedicator has manifested an intention to withdraw the offer. The latter rule is the

law in this state. *Price v. Town of Breckenridge*, 92
Mo. 378. But, under either view, the judgment of the
circuit court can not be reversed or modified on this
ground, for the reason that the defendants, upon whom
rested the burden of proving a dedication, failed to
show that this alleged act of acceptance antedated the
purchase of the land by the plaintiff. The conveyance
of the land by Clark, without reservation, amounted
to a withdrawal of the offer to dedicate.

It is insisted, however, that the plaintiff has an
adequate remedy at law, and that, therefore, there was
no necessity for the interference of a court of equity in
his behalf. The statute provides that the remedy by
writ of injunction shall exist in all cases "where an
irreparable injury to real or personal property is threat-
ened, and to prevent the doing of any legal wrong
whatever, whenever, in the opinion of the court, an
adequate remedy can not be afforded by an action for
damages." Section 5510, of the Revised Statutes of
1889. The threatened act of Dryden involved the tak-
ing of a part of plaintiff's land for public use. As was
decided in the case of *Carpenter v. Grisham*, 59 Mo.
247, where the same state of facts appeared, no injury
to land could be more irreparable, for it was the extin-
guishment of the estate itself."

But J. H. Miller strenuously argues that the evi-
dence is insufficient to sustain the decree as to him.
The evidence is that he and his father are interested in
a mill in the town of High Hill, to which place the road
in question leads; that they are also interested in ship-
ping fire clay from mines located near the southern end
of the road, and that they were otherwise interested in
having the road opened. The testimony tending to
connect him directly with the trespass is that of plain-
tiff's son and two or three hands who were engaged in
reconstructing the fence the day after Dryden had torn

it down.    According to their testimony, he came along and said to them that it was useless to rebuild the fence; that it would be torn down again.    Soon after, he returned in a buggy.    He had Dryden with him, and the latter ordered the man to quit work, stating that he intended to summon another posse and would tear the fence down again.    To this may be added the fact that his father, as the evidence tends to show, was the prime mover in the commission of the trespass, and that he acted in the matter ostensibly in the interest of himself and son.

Neither is there any merit in the point that the trial judge committed error in ignoring the verdict of the jury on the question of fact submitted to them and deciding the case according to his conceptions of the law and evidence.    This identical question has been decided adversely to the appellants.    *Snell v. Harrison*, 83 Mo. 651; *Keithley v. Keithley*, 85 Mo. 217.

Our conclusion is that the judgment of the circuit court ought to be affirmed.    It is so ordered.    All the judges concur.