BAKER, *Appellant*, v. VANDERBURG *et al.*

1. **Dedication** : PLAT : STATUTE.  A plat executed, acknowledged and recorded in conformity to section 8, page 1536, 2 Revised Statutes, 1855, which has written upon its face, across a square thereof, "this park is reserved from public use, and title kept in the proprietors," which statement is in effect repeated in the acknowledgment, will not have the effect of devoting such square to public use.

2. ———: ———: ———.  An owner, who sells lots with reference to a plat, upon which are laid off streets, alleys and other public grounds, thereby dedicates such parcels for streets and other public purposes, although such plat be not executed and recorded in conformity to the statute.  But deeds conveying lots by their numbers, and by the number of the block upon a plat where the streets and alleys had been devoted to public use, cannot of themselves make a public park out of a square, where the plat to which they refer shows that it was reserved from public use.

Baker v. Vanderburg.

3. ——: HOW MADE. A dedication of land to public use need not be evidenced by writing, but may be manifested by acts and declarations. Such acts and declarations of the land-owner must be unmistakable in their purpose and decisive in their character; indicating the intent to dedicate the land to public use, and, unless such is the case, no dedication exists.

4. ——: CASE ADJUDGED. The evidence in this case held not to show a dedication of the land in controversy to public use as a park.

5. Mayor: APPROVAL OF ORDINANCE. The approval by the mayor of a city of an ordinance appropriating money to pay for a map, prepared and sold as a private enterprise, does not make him assert as true the statements made upon such map.

6. Dedication: ACCEPTANCE. To constitute a common-law dedication there must be an acceptance by the public.

7. Estoppel. One who stands by and sees others expend money in building upon property cannot afterwards, upon uncertain evidence of dedication, ask that it be declared a public park.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Stephen P. Twiss* and *Botsford & Williams* for appellant.

(1) At the time of filing the plat of McGee's addition to the City of Kansas, Holmes and McGee were in possession of the land platted, claiming to own the same in fee simple; and the plat of said addition, being duly acknowledged by Holmes and McGee as the proprietors of said addition, duly certified and deposited for record with the recorder of Jackson county, in which the City of Kansas is situate, vested as to Holmes and McGee, and all persons claiming by, through or under them, the fee of all the streets, alleys and parcels of ground in said addition, intended for public use, as parks, in said city, in trust for public use as therein intended. 2 R. S. 1855, chap. 158, secs. 1, 8 and 9, pp.

1535, 1536; *The City of Hannibal v. Draper*, 15 Mo. 634; *Reid v. Board of Education*, 73 Mo. 295; *City of California v. Howard*, 78 Mo. 88; *McShane v. The City of Moberly*, 79 Mo. 41; *Ragan v. McCoy*, 29 Mo. 356; *City of Hannibal v. Draper*, 36 Mo. 332; *Morgan v. Railroad*, 96 U. S. —. This square having been dedicated on the plat thereof as a park, and a park being a public use, the reservation by Holmes and McGee of this park from public use, being inconsistent with the dedication and repugnant to the purposes of the grant, such reservation is void, and the City of Kansas takes the park in trust for the uses and purposes intended by the dedication. *Wood v. Water Works Co.*, 33 Kas. 590; *Price v. Plainfield*, 40 N. J. L. 608; 2 R. S. 1855, sec. 8, p. 1536. (2) The square of ground in controversy was not subdivided into lots or numbered as a lot intended for sale, but was designated on the recorded plat as a park; and the lots surrounding it being platted with special reference to this square as a park, and all of said lots having been sold by the proprietors and bought with special reference to such ground as a park, and built upon on the faith that the square was a park, constitute a dedication of such ground as a park, and Holmes and McGee and their heirs and assigns became bound thereby, and are estopped from denying that such a square was dedicated to the public as a park. *City of Bayonne v. Ford*, 43 N. J. L. 292; *Bayless v. Board of Supervisors*, 5 Dillon C. C. 549; *Ruch v. City of Rock Island*, 5 Bissell C. C. 95; *Price v. Town of Breckenridge*, 92 Mo. 378; Angell on Highways [Choate's Ed.] sec. 149, and cases cited. (3) The land in which the park in question is situate, being within the corporate limits of the City of Kansas, at the time the said addition was platted, in the year 1857, and laid out in lots, parks, streets and alleys; and the City of Kansas having accepted the same by improving the streets and alleys

in said addition and preparing an official map of the city, on which the square in controversy is designated as a public park, and exempting the same from taxation until 1870, the dedication thereof as such park became thereby complete and binding on the proprietors of said addition, their heirs and assigns, and all persons claiming under them. *Gamble v. City of St. Louis*, 12 Mo. 617; *Taylor v. City of St. Louis*, 14 Mo. 20; *Rose v. City of St. Charles*, 49 Mo. 509; *Price v. Town of Breckenridge*, 92 Mo. 378; *Derby v. Town of Alling*, 40 Conn. 410; *Abbott v. Cottage City*, 143 Mass. 521. (4) Holmes and McGee, as the proprietors of McGee's addition to Kansas City, having designated on the plat thereof the square of ground, in controversy, as a "park," and platted the lots surrounding the same with reference thereto, and conveyed said lots as platted, with the representations that this square of ground was a park, they became thereby bound to the grantees of such lots not to sell or use said square for any other purpose than a park, although the same may have been expressed on said plat as reserved from public use, and the title kept in said proprietors. *Lenning v. Ass'n*, 41 N. J. Eq. 606; *City of Bayonne v. Ford*, 43 N. J. L. [14 Vr.] 292; *Maywood v. Village of Maywood*, 118 Ill. 61; *Zearing v. Raber*, 74 Ill. 409; *Rowan's Ex'r v. Portland*, 8 B. Monr. [Ky.] 232; *Schreider v. Jacobs* [Ky. 1887] 5 S. W. Rep. 350; *City of Dubuque v. Maloney*, 9 Iowa, 450; *Chapin v. Brown*, 15 R. I. 579; *Village of Weeping Water v. Reed*, 21 Neb. 261; *Grogan v. Town of Hayward*, 6 Sawyer C. C. 498; *San LeAndro v. LeBreton*, 72 Cal. 170; *Commissioners of Franklin v. Lathrop*, 9 Kas. 453; *Commissioners of Wyandotte v. Presbyterian Church*, 30 Kas. 620; *Methodist Church v. Hoboken*, 33 N. J. L. 13; 2 Dillon on Mun. Corp. [3 Ed.] sec. 640, and cases cited. (5) Mrs. Campbell, after the dedication by Holmes and McGee of this square as a park by the recorded plat of

McGee's addition, in 1857, having sold and conveyed to the purchasers from Holmes and McGee all her right, title and interest in lots in the addition, and surrounding this square, for a valuable consideration, with special reference to said recorded plat, and having required of her grantees a release of all covenants or warranties of title in their conveyances from Holmes and McGee, thereby adopted and ratified said plat and dedication, and became bound to her grantees to maintain such square as a park, as expressed and intended in said dedication, in like manner as Holmes and McGee were bound, and to the same extent as though she had originally made such dedication herself as the proprietor of said addition. *Rector v. Hart*, 8 Mo. 448; *Dold v. Vodicka*, 49 Mo. 100; *Kaime v. Harty*, 73 Mo. 316; *Brown v. Manning*, 6 Ohio, 298; *Carter v. City of Portland*, 4 Oregon, 339; *Clark v. City of Elizabeth*, 40 N. J. L. 172; *Brooks v. City of Topeka*, 34 Kas. 277; *Fulton v. Town of Dover*, 6 At. Rep. [Del. Ch. 1879] 633; Herman on Estoppel, secs. 1145, 1147, pp. 1282, 1284, and cases cited; 2 Dill. Corp. [3 Ed.] sec. 640, and cases cited. (6) Respondents purchased the ground respectively claimed by them, in the square of ground in controversy, with knowledge of the dedication of the same as a park, and their titles are based or derived from quitclaim deeds thereto, executed by Mrs. Campbell to the heirs of Holmes and the grantee of the heirs of McGee. Respondents, therefore, are equally and effectually bound by the dedication of said square, as a park, as Mrs. Campbell and the heirs of Holmes and McGee. *Hannibal v. Draper*, 15 Mo. 634; *Ridgeway v. Holliday*, 59 Mo. 444; *Campbell v. Gas Light Co.*, 84 Mo. 352. (7) It is not necessary that the legal title should pass out of the proprietors, nor that there should be any grant of the use or easement to take the fee, to constitute a valid dedication of this square of ground as a park. The reservation, therefore, by Holmes and

McGee of the title to this park to themselves, even if valid, as expressed on the plat, did not operate to prevent the dedication of this square from taking effect as a park as intended by them. *City of Dubuque v. Maloney*, 9 Iowa, 450; *New Orleans v. United States*, 10 Pet. [U. S.] 662; *City of Cincinnati v. White's Lessees*, 6 Pet. [U. S.] 431; *Kelsey v. King*, 33 How. Pr. [N. Y.] 39; *Cummings v. City of St. Louis*, 93 Mo. 259; 2 Dillon, Mun. Corp. [3 Ed.] secs. 629, 633, and cases cited. (8) The square in controversy having been dedicated as a park by Holmes and McGee in 1857, and the lots surrounding the same sold and conveyed by them with reference to the square as a public park; and Mrs. Campbell thereafter, in 1869, 1870 and 1871, having expressly ratified said conveyances by releasing to the purchasers of said lots all her right, title and interest therein as appeared from the recorded plat of said addition, and the City of Kansas having accepted said plat by improving the streets designated therein, and preparing, in 1870, an official map of the city, on which the square in controversy is designated as a park, the same became thereby public grounds; and the action of the city authorities in taxing said ground thereafter, and in attempting to condemn the same to public use as private property, did not change the character of the square from public ground, nor operate to divest the rights which had vested in such purchasers to have said square kept and maintained as a park. *Lemon v. Hayden*, 13 Wis. 159; *Chicago v. Wright*, 69 Ill. 318; *McKee v. City of St. Louis*, 17 Mo. 184; *City of Hannibal v. Draper*, 36 Mo. 337; *Moses v. Dock Co.*, 84 Mo. 242. (9) The possession of Holmes and McGee and their grantees of the lots and parcels of ground included in McGee's addition, claiming under the title of Holmes and McGee, and under the recorded plat of said addition, was adverse to Mrs. Campbell's claim to the entire tract included in the addition, and such

possession and claim, being acquiesced in by her for more than ten years after her husband's death, operated to transfer the title to the lots to Holmes and McGee and their assigns, and to vest in the City of Kansas the fee-simple title to the streets and parks in the entire addition, as designated on said plat, and to bar Mrs. Campbell from any claim of right or title to any part of such addition. R. S. 1865, secs. 3219, 3223, pp. 543, 544; *Barclay v. Howell's Lessees*, 6 Pet. [U. S.] 500; 2 Dillon, Mun. Corp. [3 Ed.] sec. 637, and cases cited; *Price v. Town of Breckenridge*, 92 Mo. 378; *State v. Walters*, 69 Mo. 463. And it is not necessary to bar Mrs. Campbell of her right that the park should be actually enclosed. *Schultz v. Lindell*, 30 Mo. 310; *Bradley v. West*, 60 Mo. 59.

*C. O. Tichenor* for respondents, Vanderburg, Gill and Young.

There are three reasons why this land was not dedicated : (1) Because the plat shows that not only was there no intent so to do by the makers thereof, but that they feared it might be so construed if they left it unmarked. "This park is reserved from public use, and title kept in proprietors E. M. McGee, N. Holmes." Even in their acknowledgment, they declared the plat to be their free act and deed, "adhering, however, to reservation made in the specification as to parks." The plat declares this ground private property; it may be that they were not compelled so to do, but, so declaring, can it be possible, that this court will erase it and write on it a contrary declaration? McGee and Holmes are dead. They cannot explain the random talk attributed to them, from fifteen to twenty years, before this trial. But if titles to land can be divested thereby which we deny (*Cornet v. Bertelsmann*, 61 Mo. 127), then we say it amounts to nothing more than this, that they intended to dedicate if certain things were done. "To establish

a common-law dedication there must first be an intention to do it on part of the owner. And this must be unequivocally and satisfactorily proved." Washburn on Easements, 209; *Brinck v. Collier*, 56 Mo. 164; *Landis v. Hamilton*, 77 Mo. 560; *McShane v. City*, 79 Mo. 45; *The City v. University*, 88 Mo. 158. (2) A second reason is, there was no acceptance by the city. The owners could not force the city to take it. It must be true, that stronger evidence is called for to show this, in case of a park than of a street. There may be a necessity apparent for the latter; it costs but little to improve it, and the expense can be assessed against abutting owners; it grows into a thoroughfare by use. None of these reasons apply to a park. *Quinn v. Anderson*, 70 Cal. 457; *Onstott v. Murray*, 20 Ia. 469; *Baker v. Johnson*, 21 Mich. 340. (3) For a third reason we say there was no dedication, as the random talk of McGee and Holmes was not joint but separate. There is no claim that either knew what the other had said. It is well settled that a co-tenant cannot make a valid dedication. Washburn on Easements [4 Ed.] 208; *Scott v. Cheatham*, 12 Heisk. 713; *City v. Gas Light Co.*, 96 Mo. 197.

*D. S. Twitchell* for respondent, Boultt.

(1) The fact, that lots may have been sold in this addition by McGee or Holmes fronting toward this square to parties believing, on account of verbal declarations made by the sellers, that this block was or would be a park, will not have the effect to constitute a dedication as against the recorded plat. *Schuman v. Homestead*, 111 Pa. St. 48. (2) A dedication of land to public use is not to be presumed. The acts relied on to establish it must be inconsistent and irreconcilable with any other construction. *Landis v. Hamilton*, 77 Mo. 554; *Scott v. Des Moines*, 64 Iowa, 438; *Irwin v. Dixon*, 9 Howard,

10; *Eastland v. Fargo*, 58 Wis. 274; *Creamer v. McCune*, 7 Mo. App. 91. (3) McGee and Holmes, exercising whatever of right and power over this square they possessed, refused by their plat, filed and recorded, to dedicate the land in controversy to public use by writing across the block, and within the lines bounding the block, on the plat, the words, "this park is reserved from public use, and title kept in the proprietors, E. M. McGee and N. Holmes." *Grant v. City of Davenport*, 18 Iowa, 179; *Eastland v. Fargo*, 58 Wis. 274. (4) So far as the rights of plaintiff and defendants are affected by the acts of McGee and Holmes, the plat filed, and in evidence, is of greater weight and controlling influence than the verbal declarations of the makers of said plat. Laws, 1885, pp. 135–137.

BLACK, J.—The plaintiff and appellant is the owner of lots fronting on a block of ground in McGee's addition to the City of Kansas. He brought this suit for himself and all other persons similarly situated to have the block declared a public park, and to restrain defendants from erecting buildings thereon.

Mrs. Eleanor R. Campbell owned the forty acres of which the block in question is a part; and, in 1850, she and her husband, John Campbell, conveyed it to Pollard, who conveyed it to Riddlesbarger, in 1857, and he conveyed it to N. Holmes and E. M. McGee in February of the same year. The property was then within the corporate limits of the City of Kansas; and on June 3, 1857, Holmes and McGee made a plat of this and other land, and laid the same off into lots, blocks, streets and alleys, and designated the same "McGee's addition to the City of Kansas." The plat was executed and recorded according to the statute law of this state. There is shown upon this plat a block of ground, two hundred and forty-seven by two hundred and seventy-four feet, inside of the streets by which it is surrounded.

Within the lines bounding the block, and on the face of the plat, are written these words : " This park is reserved from public use, and title kept in proprietors, E. M. McGee, N. Holmes."

The plat was acknowledged before the clerk of the circuit court, and the certificate states, among other things, that Elijah M. McGee and Nehemiah Holmes acknowledged the same to be their act and deed, " adhering, however, to the reservations made in the specifications made therein as to parks." In general the lots have a width of forty-nine and a half feet, and front on the north and south streets, and are numbered. The square in question is not numbered or laid off into lots, and the lots around have a front of only twenty-five feet, and they face towards the square. There is one other block on a different part of the plat laid off in like manner, and having written on the face of it the same words, which block has never been claimed to have been dedicated to public use.

In 1865, Holmes and McGee quitclaimed, each to the other, a large number of lots; and, in October of that year, McGee conveyed to plaintiff some thirteen lots, three of which front on the square in question. Plaintiff's evidence is that he paid a higher price for these three lots because they fronted on the square; that, in his negotiations for them with Vincent, who was McGee's agent, the block was said to be a public square. He speaks of a subsequent conversation with Holmes, in which the latter said they were ready to turn it over as soon as the city was ready to improve it. The evidence shows that other persons purchased lots fronting on this square, and that the property there was sold at higher prices than at a short distance away from it. Many witnesses testified as to what McGee said about this block when endeavoring to sell property. This evidence is very indefinite, and amounts to about this, that he and Holmes were holding it for a park when the city saw fit to improve

it. On one occasion. Holmes offered to defray his share of the expenses in improving it. The plaintiff's evidence shows that, prior to 1869 or 1870, the block had not been taxed, and a committee of the common council called upon McGee, and he told them he intended to make a park out of it, but he would not dedicate it to public use. Thereafter, the property was assessed by the city. The then assessor says he assessed it back for several years, but cannot say for how many. The agent of McGee says it was assessed back to the time the land was platted, the taxes amounting to eight hundred dollars, and that Holmes and McGee paid these taxes.

As before stated, the proprietors of the addition acquired title through Mrs. Campbell. Her deed to Pollard was acknowledged in 1850, before a justice of the peace, and, therefore, defective. After the death of her husband, and, in 1869, she gave notice that she would release to purchasers of lots in the forty acres, and, pursuant thereto, did execute deeds of release to the then claimants of lots, but at that time made no deed to any one for the block in question. In 1871, she caused the block to be enclosed by a fence. Thereupon McGee, who was her brother, gathered together a number of persons, and, under the inspiring influence of a barrel of beer, made a bonfire out of the fence. His declarations made on this occasion, to the effect that the square "shall be a park," and "must be a park," were put in evidence. At this time some buildings had been erected on a few of the lots surrounding the square.

In 1880, and after the death of Holmes and McGee, the City of Kansas commenced proceedings to condemn the land for a park, but they were dismissed, and, in 1882, Mrs. Campbell conveyed an undivided third to George I. Seeney, who claimed an undivided half through the heirs of McGee. She also conveyed a one-third to the widow and heirs of Holmes. Suit for partition was then instituted between Mrs. Campbell and these persons

to whom she conveyed; and, pursuant thereto, the commissioners divided the square into lots, and assigned part of them to Mrs. Campbell, part to Seeney, and the residue to the heirs and widow of Holmes. The defendants in this suit acquired the lots claimed by them from the persons to whom they were assigned by the partition decree.

The evidence shows that from the time the plat was filed down to 1871, the block was unfenced, open and not different from many other open and unimproved parcels of land in the same locality. It was never at any time improved or used as a park, but was simply an open piece of ground devoted to no particular use whatever.

This suit was commenced in August, 1885, a notice of an intention to bring it having been served on the principal defendants in July, 1885. At and prior to the date of that notice the defendant, Vanderburg, had erected upon his three lots two brick buildings, and had completed the foundation for a third one. The defendant Young acquired her lots from Mrs. Campbell, and erected two substantial brick houses there in 1884. Mrs. Boultt, another defendant, had completed one brick house, and had excavated the foundation for another. The defendants all paid full value for the property purchased by them.

1. Counsel for the appellant present a great many propositions of law based upon the assumption that Holmes and McGee, by the plat, dedicated the square to public use as a park. It becomes necessary at the outset to determine whether this assumption is well founded. The plat, as we have said, was executed, acknowledged and recorded in conformity to the statute. Section 8, of 2 Revised Statutes, 1855, page 1536, provides that such plat "shall be a sufficient conveyance to vest the fee of such parcels of land as are thereon expressed, named, or intended for public uses in the

county in which such town * * * is situate, in trust and for the uses therein named, expressed or intended, and for no other use or purpose." To what public use did the proprietors devote this parcel of land? They say on the face of the plat, "This park is reserved *from* public use, and title kept in the proprietors." This statement is in effect repeated in the acknowledgment. They not only say the title is kept in themselves, which would have passed to the county had the square been devoted to public use, but they say the property is reserved *from* public use. Stronger language could not have been used to show that they did not intend to devote the parcel of land to public use. This statement completely overcomes any inference that might have been drawn had no statement been made, or had the word "park" only appeared upon the face of the plat.

But the contention seems to be in effect, if not in terms, that we should strike out and disregard all this statement after the word "park." We know of no rule of law, ancient or modern, which gives to the courts power to deal with contracts in any such a way. We must take the statement as a whole, and when that is done it is shown beyond all doubt that the square was not, by the plat, devoted to public use.

Where there is a map or plat, though not executed and recorded in conformity to the statute, and on which plat is laid off streets and alleys and other public grounds, and the owner sells lots with reference to the plat, his acts in making such sales amount to a dedication of such parcels as appear to be designed for streets and other public purposes. 2 Herman on Estoppel and Res Judicata, sec. 1147. In view of this uncontroverted principle of law, the plaintiff put in evidence a vast number of deeds executed by Holmes and McGee to various persons including the plaintiff. These deeds convey the lots by their numbers and by the number of

the blocks. The streets and alleys had before been irrevocably devoted to public use, and the deeds could do no more. They cannot, of themselves, make a public park out of this square, for the very plat to which they refer shows that it was reserved from public use. So too in respect of the various deeds made by Mrs. Campbell to the many lot owners. By these deeds, she ratified the plat for all that it purported to say or do; but, as we have seen, the plat did not profess to devote the square to public use, but on the contrary reserved it from such use.

2. The plat and the deeds made by Holmes and McGee, combined, did not work a dedication of the square, and the question arises whether the acts and declarations of these persons show a common-law dedication. For the purposes of this question, we shall treat Holmes and McGee as the owners of the land when the addition was laid out, laying out of view the claim of Mrs. Campbell, asserted by reason of her former defective deed. A dedication of land to public use need not be evidenced by writing. It may be manifested by acts and declarations. Dedications, it has been said, have been established in every conceivable way by which the intention of the party could be manifested. Washb. on Eas. [3 Ed.] 186. But the acts and declarations of the land-owner, indicating the intent to dedicate his land to public use, must be unmistakable in their purpose and decisive of their character. *Ib.* 188. There must be a clear intention on the part of the owner to devote it to public use. *Brinck v. Collier*, 56 Mo. 160; *Landis v. Hamilton*, 77 Mo. 560. An intent on the part of the owner to dedicate is absolutely essential, and, unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. 2 Dillon, Mun. Corp. [3 Ed.] sec. 636. The principal circumstances to show a dedication here are, first, the fact that these lots around the square were sold for a

higher price than those not facing upon it; second, the reported declarations of Holmes and McGee. A third circumstance is the fact that McGee in 1870, while mayor of the city, and in his official capacity, approved an ordinance appropriating one thousand dollars to O'Flaherty and Koehler for one hundred maps of the City of Kansas, and on which it is said this block is marked "park." This map is not in the record, and we do not know what it shows. Sufficient appears, however, to show that its preparation and sale was a private enterprise on the part of these civil engineers. The approval of the ordinance did not make McGee assert, as true, the statements made upon the map.

The declarations of Holmes and McGee occurred many years ago, and they died some ten or twelve years before the institution of this suit. These statements, as reported, are loose and uncertain, and the most to be made out of them is, that they, especially McGee, intended to turn the square over to the city for a park or market place when the city was ready to accept and improve it. This, at most, was but a conditional offer, and was never accepted during the lifetime of these pro- prietors, or at any other time. On the other hand, the persons who purchased these lots knew, from the public records, that this square had not been devoted to public use. Under this state of the case, we should expect to see the deeds to them make some statement to the effect that this square was a park, but nothing of this kind is said in them. McGee declined to convey the square to the city when called upon by a committee of the com- mon council, and would not donate it for a public park; and thereafter the property was taxed as other private property. These substantial acts are far more valuable, as evidence, than the loose reported declarations; and are strong evidence to the effect that the proprietors had not at that time devoted the property to public use.

To constitute a common-law dedication there must be an acceptance by the public. 2 Herm. on Est. & Res. Ad., sec. 1142. We have held where there is an unconditional attempt or offer to dedicate a parcel of land for a public square, and such offer is followed by adverse use by the public, that such use is a sufficient acceptance. No formal acceptance by the corporate officials is necessary in such cases. *Price v. Town of Breckenridge*, 92 Mo. 382. The acceptance is sufficiently indicated by common use, certainly so in the case of a square or park. *Abbot v. Inhabitants of Cottage City*, 143 Mass. 521. Such use is often a sufficient acceptance of a street. *Rose v. City of St. Charles*, 49 Mo. 510.

Had these declarations of McGee and Holmes been followed by adverse use by the public, then we would find no difficulty in making them harmonize with that use. But there is no evidence, whatever, that the public ever used this square as a park. The contrary is affirmatively shown. Besides all this, the plaintiff stood by and saw these defendants expend their money in building up this property, and now comes forward and asks the court to declare the block a public park on the uncertain evidence produced. This cannot be done, and the judgment dismissing the petition ought not to be disturbed.

We have not made mention of some of the evidence because it is of no value on the question of dedication. The respondents insist that they hold under Mrs. Campbell, and are not affected by any dedication by plat or otherwise made by Holmes and McGee; but, with the result reached that no dedication is shown even as against those claiming under Holmes and McGee, it is unnecessary to consider the question thus raised. Some other questions are discussed in the briefs, but they are subordinate to those before ruled.

The judgment is affirmed; RAY, C. J., and BARCLAY, J., absent; the other judges concur.