## STATE OF MISSOURI, Respondent, v. WILLIAM E. DeVALL, Appellant.

### Kansas City Court of Appeals, June 12, 1911.

**CRIMES AND PUNISHMENTS: Intent: Tearing Down Fence: Dedication of Street.** Defendant was tried upon information under section 4598, R. S. 1909 (section 1958, R. S. 1899), for willfully and maliciously tearing down a certain fence in which he had no interest. The real issue was one of fact going to the intent of defendant which depended upon the further question of whether defendant had the right to tear down the fence. Defendant claimed that the fence crossed a public street; the state contended that as the street had never been used as such, and had been fenced up by private persons, and in their possession for a period of ten years, it was not a public highway. The town in which the alleged street was situated was never incorporated, and the street was never used by the public. There was an attempt to dedicate, as provided by statute, but the public never accepted the proffered dedication, nor used the land for street purposes. *Held*, that, although the attempt to dedicate would have been treated as a common-law dedication, had it been accepted by the public, however, since there was in fact no dedication of the land for street purposes, the defendant was not authorized to tear down the fence of private persons, they being in possession, and claiming title to the land. As against defendant, possession for any length of time with claim of title was sufficient.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*L. B. Hooper* and *F. B. Ellis* for appellant.

*H. T.* and *W. S. Herndon* for respondent.

BROADDUS, P. J.—The defendant was tried upon information of the prosecuting attorney of Clinton county for willfully, maliciously and unlawfully pulling down a certain fence, in which he had no interest. The information contained two counts. The second count was dismissed and trial had on the first count under section 1958, Revised Statutes Mo. 1899.

He was convicted and his punishment was assessed at $25.00, and from the judgment rendered thereon he appealed.

The statement of the parties are not conflicting and do not differ materially and for convenience we adopt that of respondent, as it supplies a statement material to the case, that is not contained in that of the defendant. It is as follows: "On the 23d day of March, 1881, George Funkhouser et al., being the owners of thirty acres of land, in Clinton county, made and acknowledged a plat of the same as 'The town of Plattsburg Mineral Springs,' which plat was recorded on the 23d day of March, 1881. And reciting; that we have laid the same out in lots, blocks, streets and alleys of the size, shape and dimensions and width as in the plat stated, and we grant and dedicate to public use streets and alleys as indicated for the behoof and benefit of the occupants of said town and vicinity. This town was never incorporated and the land was an unenclosed timbered tract.

"On the 27th day of June, 1899, F. C. Frost conveyed to John W. Mays-a certain part of said thirty acres, described in the deed as 'lots 11, 12, 13, 14, 15, 16, 17, 18, 19, in block 8,' Plattsburg Mineral Springs in section 35, township 55, range 32. In April, 1899, previous to the date of this conveyance, Mays, with his family, moved into the building on said lots, mentioned in the evidence as the hotel."

"At the time Mays took possession of these lots, the evidence for the state shows the fence which defendant is charged with cutting down was then across what is shown on the plat as 'Broadway' street, and formed part of the fence enclosing the lots conveyed to Mays by Frost, and that part of 'Broadway' street lying south of them, the whole being in one enclosure. On the 10th day of October, 1900, Mays purchased from J. N. Bowling lots 7, 8, 9, 10, in said block 8, and also lots 9 and 10, in block 9, of said Mineral Springs.

The defendant joined in this conveyance as mort-gagee. When Mays purchased the last-mentioned lots he fenced them into his enclosure by extending his fence around them. Mays continued in the use and occupation of the lots conveyed to him by Frost, and that part of Broadway street enclosed by said fence from April, 1899, and the lots purchased from Bowling, from the date of the deed to his death, which occurred in 1905, and since his death his widow, Annie D. Mays, and his son, John W., have occupied and used the same. The location of these lots and the street between can be seen from plat attached to appellant's brief.

"On the 1st day of January, 1901, the defendant purchased from said J. N. Bowling a tract of land adjoining on the north, east and south of the lots and part of street occupied and enclosed by Mays, and described in the deed to defendant as 'Thirty acres off the west side of the southwest quarter, northeast quarter, section 35, township 55, range 32, except such lots as have heretofore been conveyed by grantors in what was the plot known as Plattsburg Mineral Springs, now vacated.'' Bowling had had possession of this tract for several years prior to this conveyance and enclosed the same with a fence, which extended across 'Broadway' immediately east of the Mays lots, and east of the fence which defendant is charged with cutting down, thus completely closing up all of Broadway street east of the part enclosed and occupied by the widow Mays and her son.

"On the 4th day of October, 1909, the defendant, in company with his son and two hired hands, the witnesses, Briggs and Dozier, went from his home in Plattsburg to the premises occupied by the widow Mays and her son, in the son's absence, and cut down and removed and left down the fence, extending from the southeast corner of lot 14, in block 8, south across 'Broadway' street, to the northwest corner of lot 9,

in block 9, said fence, so cut down, forming a part of the fence enclosing the lands in possession of the widow Mays and her son. The defendant did this making the claim that it was a public street. The evidence shows that a public highway extends along the entire west side of defendant's land and touches it at all points except where it runs along the west side of the Mays land, and that he had two gates, opening into his land, which was enclosed in one pasture, one north and the other south of the Mays land. The evidence further shows that the defendant did not, after cutting down this fence, pass on to his own lands, but that he went there for the sole purpose of removing this fence; that he did so and returned. The evidence further shows that the 'Broadway' street was never marked out or defined, except on the map; was never traveled or used by the public; that the land was of such a character that it could not be so used, and that no part of it, east of the fence cut down by defendant, entered into or connected in any way with any other traveled road or street. It will be seen by reference to the plat, in appellant's brief, all of Broadway street, which was enclosed by Mays, is in front of lots 7, 8, 9, 10, 11, 12 and 13, in block 8, and on the side of lot 9, in block 9, owned by him, and the evidence shows that all of said street, east of the fence which defendant placed across it, was in an enclosed pasture. Defendant says that he paid his grantor, Bowling, to build this fence before he got his deed. From the time of the building of this fence, by defendant's direction, all of said street east of said fence, if it ever had been used as a public highway, ceased to be so used. The remainder of said street west of this fence was contiguous only to lots owned by Mays."

The court instructed the jury in substance, that if they found that defendant committed the acts charged, "willfully, maliciously and unlawfully," they would find him guilty. We think this was a correct and suf-

ficient direction as to the intent which was to be attributed to defendant before they could find him guilty.

There was no question but what defendant did in fact throw down the fence in question, and that it was a fence enclosing the premises of the Mays, but the real issue was one of fact going to the intent of defendant and that, whether or not he had the right to throw it down, otherwise, was his act committed without any criminal intent.

The contention of defendant was that the so-called street in question was a public street and that as such he was justified in throwing it down. On the other hand, the state contended, that as the street had not been used as such and had been fenced up by Mays and his family, and was in their possession for a period of ten years it was not a public highway. The court instructed the jury accordingly. On the part of the state, if they found that the ground had not been used as a street for a period of ten years, or that the same had been fenced and in the possession of Mays and family for a period of ten years, then it was not a public highway. For defendant the court instructed the jury if they found that the strip of ground had been used as a street for more than ten years before the filing of the information then the defendant was not guilty as charged.

The town of ''Plattsburg Mineral Springs'' was never incorporated and the street was never used as such by the public. It is contended by defendant that the street in question was dedicated to public use and that occupation and claim of ownership for ten years did not give Mays the right as against the public to enclose it by a fence. Possession of lands dedicated to public use can never ripen into title. [Railroad v. Baker, 183 Mo. 312; Tracy v. Bittle, 213 Mo. 302; Han. & St. Jo. Ry. Co. v. Totman, 149 Mo. 657.]

A common law dedication is not complete until the public accepts it as such. [McGrath v. Nevada,

188 Mo. l. c. 107.] There must be an acceptance by the public to constitute a common law dedication. [Vossen v. Dautel, 116 Mo. 379; Emmerson v. Hughes, 110 Mo. 627.]

There was an attempt to dedicate as provided by the statute, but failing in that the attempt will be treated as a common law dedication, provided, it was accepted by the public. But the evidence fails to show that the public accepted the proffered dedication and used the street for the purpose intended. There being in fact no dedication of the land for street purposes, the defendant was not authorized to tear down the fence of Mrs. Mays, she being in possession and claiming title. As against defendant, possession for any length of time with claim of title was sufficient. The defendant was properly convicted. Judgment affirmed. All concur.