[Civ. No. 4107.   Second Appellate District, Division One.—July 14, 1924.]

## PEOPLE OF THE STATE OF CALIFORNIA, Respondent, v. SOÚTHERN PACIFIC RAILROAD COMPANY (a Corporation), et al., Appellants.

[1] DEDICATION—STREETS—MAPS.—The fact that a public map shows land laid out as a street is not, in itself, evidence of dedication.

[2] ID.—DEEDS—STREET AS BOUNDARY LINE—EVIDENCE.—The fact that in deeds, by the original owners and their grantee, of land forming a parcel of a tract, which tract included a strip claimed by a city to have been dedicated for a street, the center line of that street is mentioned as a boundary line of the parcel conveyed, is not alone sufficient to prove that the grantor had dedicated anything to the public, or that any offer of dedication of land for such street had been accepted.

[3] ID.—SALES OF LAND—REFERENCE TO SUPPOSED STREET LINES—EVIDENCE.—As between an owner of land and the public, the mere making of sales with reference to supposed street lines does not constitute a dedication to the public. An acceptance must be had either by user or by some formal act.

[4] ID.—REFERENCES TO MAP—ACCEPTANCE—EVIDENCE.—Evidence showing references (as contained in deeds or quitclaims) to a map made by a town surveyor on which is shown a strip of land, claimed by a city to have been dedicated for a street, with the side-lines of a street, and items of evidence showing similar references to the blocks delineated on said map, are insufficient to prove acceptance, by the public, or any offer of dedication of said strip for street purposes.

[5] ID.—RECORDATION OF MAP — EFFECT UPON PRIOR CONVEYANCES—WITHDRAWAL OF DEDICATION.—Where a map made by a town surveyor on which is shown a strip of land claimed to have been dedicated to a town for a street was filed as a public record of the county after eleven years from the time when it was made, that act was too late to be effective as against owners who had acquired title under conveyances which ignored the existence of any street or supposed street, and disposed of the entire area as

1.   See 9 Cal. Jur. 33.
2.   See 9 Cal. Jur. 25; 13 R. C. L. 19.
3.   See 9 Cal. Jur. 29; 13 R. C. L. 27.
4.   See 9 Cal. Jur. 52.
5.   See 9 Cal. Jur. 60, 65; 13 R. C. L. 31.

private property. Such conveyances were a withdrawal of the offer of dedication—if any such offer had been made.

[6] Id.—Omission of Recorded Map to Show Street Line—Notice.
Where a map made by a town surveyor as recorded did not show the westerly line of a strip of land claimed by the town to have been dedicated for the purpose of a street, the recordation of such map did not give notice to anyone of the existence of such claimed street.

[7] Id.—Action to Compel Removal of Obstructions—Title—Testimony of Former Owner—Inadmissibility of.—In an action by a town to compel the removal of obstructions from a strip of land claimed to have been dedicated and accepted as a street, the testimony of a former owner of land, which included said alleged street, given in a prior action, to the effect that he did not claim said street was not admissible as evidence, nor as an admission against interest, against the defendants in the instant action, where at the time of trial of said prior action said former owner had ceased to own the land; and the objections of defendants to such testimony should have been sustained.

[8] Id.—Maps—Minutes of Board of Trustees—Evidence.—In such action, the trial court erred in overruling the objections of defendants to the admission in evidence of a map made by a town surveyor showing the alleged street, and of the minutes of the town board of trustees approving and directing the recordation of said map, said objections being that the plat was neither made nor filed by or with the consent of the owner of the land platted, and that no evidence was offered to prove that any offer had been made, or ever was made, to dedicate the streets thereon, and particularly the alleged street involved in the instant action.

[9] Id.—Attempted Acceptance—Absence of Offer of Dedication—Exclusion of Evidence.—In such action, exhibits showing action of the board of trustees about eight years after recordation of such map, attempting to accept as a public street land including the land in controversy, should have been excluded from evidence in the absence of any evidence tending to prove that at that time there was an existing offer of dedication by the owners of the property.

[10] Id.—Insufficiency of Evidence.—In such action there is no sufficient competent evidence to sustain the cause of action stated in the first count of the complaint, which rests wholly upon a claim

6.  See 9 Cal. Jur. 40.
7.  See 10 Cal. Jur. 1092; 1 R. C. L. 522.
8.  See 9 Cal. Jur. 33, 71; 13 R. C. L. 24.
9.  See 9 Cal. Jur. 72.

of dedication and acceptance of the strip of land claimed to be a public street.

[11] ID.—ADVERSE USE — FINDINGS — EVIDENCE. — In such action in which it was also sought to establish the fact that the strip of land in controversy was a public street through adverse use thereof, there is evidence sufficient to sustain the finding of the trial court that the land in question was for many years prior to the commencement of the action (the findings say for more than forty years) continuously and adversely used by the public in general for the purposes of travel thereon as a part of a street with claim of right so to do, with knowledge of the owners of the land and with general knowledge of such claimed use, and has been generally recognized as and acknowledged to be a public street.

[12] ID.—ADVERSE USE—SUBSEQUENT UNAUTHORIZED OBSTRUCTIONS— ABANDONMENT. — In such action, if the evidence was sufficient to prove that the street in question had become established by adverse use, it did not cease to become a street merely because obstructions were subsequently placed therein by city employees or officers not legally authorized so to do.

[13] ID.—ESTABLISHMENT OF PUBLIC ROAD BY ADVERSE USE—ESSEN- TIALS.—In order to establish a public road by adverse use, the use must have been adverse to the rights of the owner, open, notorious and hostile, continuous and exclusive, and must have continued for the statutory period of five years.

[14] ID. — ESTOPPEL — EVIDENCE. — The relocation of fences, placing them down the center of the street in question by order of a member of the town board of trustees without authority to do this, or any other facts in the record, do not establish the claim that plaintiff is estopped from maintaining the instant action.

(1) 18 C. J., p. 100, sec. 113 (Anno.).    (2) 18 C. J., p. 98, sec. 108 (Anno.).    (3) 18 C. J., p. 62, sec. 48, p. 72, sec. 67.    (4) 18 C. J., p. 97, sec. 107.    (5) 18 C. J., pp. 122, 123, sec. 155.    (6) 18 C. J., p. 117, sec. 139.    (7) 22 C. J., p. 357, sec. 413.    (8) 38 Cyc., p. 1350.    (9) 38 Cyc., p. 1350.    (10) 18 C. J., p. 97, sec. 107. (11) 29 C. J., p. 393, sec. 29; 28 Cyc., p. 845.    (12) 28 Cyc., p. 843. (13) 29 C. J., p. 373, sec. 4; 28 Cyc., p. 835.    (14) 21 C. J., p. 1192, sec. 193.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

12.  See 19 Cal. Jur. 33.
13.  See 18 Cal. Jur. 1020; 1 Cal. Jur. 522 et seq.; 13 R. C. L. 37.

Frank Thunen for Appellants.

Bowker & Sheridan and H. F. Orr for Respondent.

CONREY, P. J.—In the name of the People of the State, the city of San Buenaventura brought this action to compel defendants to remove certain obstructions from an alleged public street named Kalorama Street. Judgment went for the plaintiff, and the defendants appeal.

The complaint is in two counts. The first count claims under a dedication of land for the street, and acceptance thereof by the public. The second count claims through adverse use of the described land, with claim of right so to do, such claim being known to the owners of the land and to the public generally. The answers of the defendants deny the dedication, deny the acceptance, and deny the adverse use. Appellants contend that the evidence is insufficient to sustain the findings of the court upon these issues.

The disputed strip of land is included in what is alleged to be that part of Kalorama Street which extends south from the intersection of that street with an east and west street called Front Street. That Front Street, and Kalorama Street north from Front Street, exist as public streets, is not denied. Beach Street, as shown on the map, Exhibit One, parallels Front Street, one block south from Front Street. The block of land bounded on the north by Front Street, on the south by Beach Street, on the east by Laurel Street, and on the west by the alleged Kalorama Street, is known as block 21. The Southern Pacific railroad station is located in block 21, where the right of way runs in a direction extending northwesterly toward and across and beyond the alleged Kalorama Street. As conveyed by Robert Sudden to Pacific Improvement Company (predecessor of the defendants) in April, 1887, for railroad and warehouse purposes, the premises described in that deed included the land which is the subject of the present controversy. The right of way parallels the shore of the Pacific Ocean, which at that point is only a short distance (apparently four hundred feet, more or less) from the right of way.

In July, 1893, the Pacific Improvement Company conveyed to Southern Pacific Railroad Company the premises acquired by said deed from Robert Sudden. The Southern Pacific

Company is lessee of property rights of the Southern Pacific Railroad in and to the same property. The Associated Oil Company is the lessee in possession (under said S. P. R. Co. and the S. P. Co.) of a part of said land, which is also a part of the land in dispute. In the findings, the land occupied by the Associated Oil Company is described as "a parcel of land approximately 30 feet wide and 100 feet long, lying on the easterly side of Kalorama Street in the city of San Buenaventura, and on the south side of the right of way of said Southern Pacific Company." It is on this parcel of land that the warehouse and other structures exist, placed and maintained thereon in the year 1918 by the Associated Oil Company, and of which the plaintiff claims that they are an obstruction to the street, and that they constitute a public nuisance.

The findings declare that the city now is, and for more than twenty years prior to the commencement of this action has been, the owner, for street purposes, of the parcel of land described in the complaint; "that the said parcel of land was dedicated and abandoned by the owners thereof to the public prior to the acquisition of any interest therein, or in or to contiguous lands, by any of said defendants, and was accepted by the public as and for a public street."

At the trial the court first received in evidence, as Plaintiff's Exhibit One, a map entitled "Map of the Addition to Town of San Buena Ventura, surveyed by John T. Stow, town surveyor, under instructions from the Board of Town Trustees, May, 1876." On this map there appears a statement, over the purported signatures of the town trustees and clerk, as follows: "Approved and declared to be the official map of the Addition Town of San Buena Ventura, by resolution of the Board of Trustees passed June 5, 1876."

There is also thereon the recorder's certificate, "Recorded at request of Board of Trustees, May 2nd, 1887, at 9 A. M.— L. F. Eastin, Recorder."

This map shows Kalorama Street, with its side-lines, north of Front Street. According to the copy of this map as contained in the transcript of the bill of exceptions (duly certified to be a copy of the map introduced in evidence), the map shows the west line of block 21 and of block 27 (south of 21) in direct line with the east line of Kalorama Street, but does not show any west line of Kalorama Street between

Front Street and the bluff overlooking the ocean beach. In this particular, the map as shown by the transcript differs from its delineation of the neighboring north and south streets, in all of which both of the side-lines are extended all the way to the beach or bluff. It appearing likely that there was some error in the copy of the map as contained in the transcript, we have proceeded under section 953 of the Code of Civil Procedure, and have examined the original map. Counsel have also filed a certified copy of a part of the map as recorded in the recorder's office. We find that the original map shows the west line of Kalorama Street south of Front Street all of the way to the ocean bluff in direct line with the west line of Kalorama Street north of Front Street. The condition of the map indicates that this line was always there. But it appears that when the map was recorded in 1887, the copyist in the recorder's office erroneously omitted said west line of Kalorama Street south of Front Street.

The map also shows certain barrancas running back from the ocean across the strip that would be Kalorama Street on the extension south from Front Street. No barrancas or other obstructions appear across said other streets. On said map there also appears a note which, among other things, states that the streets are sixty feet wide—with exceptions not applicable to Kalorama Street or to any street parallel therewith.

The court next received in evidence certain minute entries of the board of trustees of the town of San Buenaventura of its meeting held on the fifth day of June, 1876. (Plaintiff's Exhibit 2.) These entries first recite the submitting to the board, by the town surveyor, John T. Stow, of a map which, by its description in the minutes, appears to be the said map, Plaintiff's Exhibit 1. "It was then ordered by the Board that the town clerk, after the absent members shall have approved and signed their approval of said map, that he have the said map recorded in the office of the County Recorder of Ventura County."

The court next received in evidence minutes of said board of trustees, dated May 13, 1895 (Plaintiff's Exhibit 3), containing a committee report relating to the matter of extending Laurel and Kalorama Streets as open streets to the south line of the railroad right of way. The board ordered the town attorney to draft an ordinance concerning said matter.

The court next received in evidence (Plaintiff's Exhibit
4) an ordinance of said town, dated May 20, 1895, marked
"Ordinance No. 78," which on that day was approved and
adopted and ordered filed of record.  This ordinance is en-
titled "Ordinance accepting that portion of Kalorama street
from Front street to the southern boundary line of the right
of way of the Southern Pacific Railroad."  Section 1 of the
ordinance reads as follows: "Kalorama street from the south
line of Front street to the south line of the 300 feet right
of way of the Southern Pacific Railroad having heretofore
been dedicated and having heretofore been traveled and for
more than five years used by the public as a highway and
public street, it is hereby accepted as a street and by this
board of trustees declared to be a public street and opened
to the public as such."

To the offer in evidence of Plaintiff's Exhibits 1 and 2,
defendants objected on the grounds (a) that the plat was
neither made nor filed by or with the consent of the owner
of the land platted; (b) that no evidence was offered to
prove that any offer had been made, or ever was made, to
dedicate the streets thereon, and particularly the portion of
Kalorama Street involved in this action.  Appellants now
contend, on the same grounds, that said exhibits, and the
evidence relating thereto, are insufficient to prove that there
ever was any dedication, or offer and acceptance of dedica-
tion, of said land for street purposes.

[1]  It is an established rule that the fact that a public
map shows land laid out as a street is not, in itself, evidence
of dedication.  (*Cook* v. *Sudden*, 94 Cal. 443 [29 Pac. 949].)
Not denying this rule, respondent asserts that in this case
additional evidence of dedication is found in the record, con-
sisting of (a) the filing of the map; (b) evidence of con-
tinuous user; (c) reference to the map in deeds and other
instruments; (d) conveyances by reference to the blocks laid
out and delineated on the map; (e) an explicit statement
under oath, made by the owner of the premises, that he did
not claim Kalorama Street.

It is true that in certain deeds executed prior to the deed
of Robert Sudden to the Pacific Improvement Company
descriptions had been written which referred to Kalorama
Street.  In June, 1884, Carpentier and Steinbach (the origi-
nal owners of all of the land shown on said map) conveyed

to Snodgrass a parcel, by metes and bounds, wherein the description commenced "at the point where the south line of Front street intersects the center line of Kalorama street," and closed with courses running northwesterly along the beach "to said center line of Kalorama street, thence northerly along said center line of Kalorama street to point of commencement." In June, 1885, Snodgrass conveyed to Robert Sudden by the same description. The title of the defendants deraigns under these deeds. The deed of Sudden to the Pacific Improvement Company, and the subsequent deed and leases, deal with lands including Kalorama Street, all as private property, and do not mention Kalorama Street, although they designate the described land as "being a portion of the Eastern Addition to said Town." The inscriptions on the map Exhibit One do not describe it as an "Eastern Addition."

[2] The fact that in the deed to Snodgrass, and in the deed to Sudden, "the center line of Kalorama street" is mentioned as a boundary line of the conveyed land, is not alone sufficient to prove that the grantor had dedicated anything to the public, or that any offer of dedication of land for such street had been accepted. [3] As between an owner of land and the public, the mere making of sales with reference to supposed street lines does not constitute a dedication to the public. "An acceptance must be had either by user or by some formal act." (*County of Inyo* v. *Given,* 183 Cal. 415, 420 [191 Pac. 688, 690].)

[4] The evidence showing references (as contained in deeds or quitclaims) to the map, and the items of evidence showing similar references to the blocks delineated on the map, are alike insufficient to prove acceptance, by the public, of any offer of dedication of this land for street purposes. [5] And when at last, after eleven years from the time when the map was made, it was filed as a public record of the county, that act was too late to be effective as against owners who had acquired title under conveyances which ignored the existence of any street or supposed street, and disposed of the entire area as private property. Such conveyances were a withdrawal of the offer of dedication—if any such offer had been made. "A deed *in solido* without reservation of easements or streets, . . . itself operates as a revocation." (*City of Oakland* v. *Oakland Water Front*

*Co.,* 162 Cal. 675, 684 [124 Pac. 251, 255].) **[6]** Moreover, as we have pointed out, the map as recorded does not show the westerly line of Kalorama Street south of Front Street, and therefore we think that such recording did not give notice to anyone of the existence of such street south of Front Street.

**[7]** Concerning respondent's claim that the evidence shows an explicit statement made by the owner of the premises that he did not claim Kalorama Street, this refers to testimony given by Robert Sudden at the trial of the action of *Cook* v. *Sudden, supra.* From the record in that case, said testimony was read in evidence at the trial of this action. It is apparent that at that time Sudden had ceased to own the land, for his testimony referred to the fact that the railroad had "got the land down there." Therefore, his testimony in that action was not admissible as evidence, nor as an admission against interest, against the defendants in this action. Also, his statement was not to the effect that he had offered to dedicate this land for street purposes. The objections of appellants to the testimony of Sudden should have been sustained.

**[8]** From the foregoing, we conclude that the court erred in overruling the objections of appellant to the admission in evidence of said Exhibits 1 and 2. **[9]** Also we think that Exhibits 3 and 4, showing action of the city council in the year 1895, attempting to accept as a public street land including the land in controversy in this action, should have been excluded from the evidence. In the absence of any evidence tending to prove that at that time there was any existing offer of dedication by the owners of the property, such proceedings of the city council could not be effective as an acceptance.

**[10]** From the views hereinabove expressed, it follows as a necessary conclusion that there is no sufficient competent evidence to sustain the cause of action stated in the first count of the complaint, which rests wholly upon a claim of dedication and acceptance.

The court further made findings favorable to the plaintiff on the second count of the complaint, which seeks to establish the creation of a public street, including the land here in controversy, by adverse use thereof by the public under

68 Cal. App.—11

claim of right for a period of time sufficient to maintain this
cause of action. It is necessary to review some of this evi-
dence. The testimony of James McGlinchey relates to con-
ditions along the line of the alleged street at and after the
year 1878. He testified in substance that at that time he
traveled over the land where the south extension of Kalo-
rama Street from Front Street crosses the Southern Pacific
right of way; that to get down to the beach they went down
and crossed where the railroad tracks are now "and went
on down to the foot of the bank and then we came along by
the south side of the station and went down on the east side
down on the trail there." In this testimony, the phrase "the
foot of the bank" is indefinite, but apparently it means the
bluff next to the beach. This is so, because later on the wit-
ness stated that "the tide always drifted up to the bank."
The witness with his father made trips across this land to
the beach for the purpose of gathering driftwood on the
beach and hauling it back up to a place where they would
dump the wood "at the station at the end of Kalorama
street." He gives no explanation of the phrase "the sta-
tion," but it must have been south of the present railroad
right of way because he says that from that point, "the
station at the end of Kalorama street," they traveled north
across what is at the present time the Southern Pacific right
of way, to Front Street. This witness further stated that
there was other travel upon the street at that time. This
witness stated that at one time there was a fence along there
and a gate, but he does not say that the fence or gate ran
across the street. On the contrary, from this testimony, the
fence and the gate appear to have run north and south and
probably were maintained by Captain Sudden, owner of
block 21. The witness said that after the railroad was con-
structed he helped to farm the land to the east of Kalorama
Street for Captain Sudden. "We went right across the rail-
road track and turned to the left and opened the gate to
get inside." Referring to the suggestion that the travel
might have been through a barranca, the witness said that
some people went down through the barranca, but that he
and his father went down to the beach on high ground and
not through the barranca. "We went down on this road.
From the bluff we went down to the next barranca to the
east, . . . " etc.

Robert K. Morgan testified to the fact of travel down Kalorama Street prior to the time the railroad came through. "I used to go down on Front Street and then south on Kalorama, I should judge about halfway, possibly paralleling the railroad tracks by the beach; and there was a road across the Sudden field where they traveled to haul up produce and stuff." While this testimony does not carry the used road along Kalorama Street all the way to the beach, it does carry it south of the railroad right of way. This witness further testified, "the fences have always been along Kalorama street on both sides as far back as I can remember." Referring to another instance of use of the street, he said, "We went down Kalorama street to the south line of the Southern Pacific right of way and then went east. . . . The fence stood on the east line of Kalorama street, and in hauling the refined products from the refinery, they came over this road in Kalorama street and came north on Front street, crossing the railroad right of way. There was no gate there; nor was there any sign reading 'Private Way, or right to pass through revocable' or any signs of such nature."

[11] Without reciting the testimony of other witnesses, we deem it sufficient to say that notwithstanding some conflict in the evidence, there is evidence sufficient to sustain the finding of the court that the land in question was for many years prior to the commencement of this action (the findings say for more than forty years) continuously and adversely used by the public in general for the purposes of travel thereon as a part of Kalorama Street with claim of right so to do, with knowledge of the owners of the land and with general knowledge of such claimed use, and has been generally recognized as and acknowledged to be a public street. This is our conclusion, notwithstanding the fact that there are two fences running down near the center of the street parallel to each other. Morgan said that one of these fences was put there by the Standard Oil Company when it put up its tank "ten years ago." These fences are about two or two and one-half feet apart. At about the same time the other fence, the western of these two fences, was erected by the employees of the city under the orders of a city officer. The witness Hamilton testified that he was a city trustee about 1910 or 1911; that at that time the city ac-

quired the Beach Park property, ''which is the property lying south of the Southern Pacific Company's right of way to the west of the extension of Kalorama street''; he further testified: ''The road to the park at that time was down through Kalorama street across the Southern Pacific Company's tracks. . . . At that time there was what was called a panel fence on the east boundary of the city park. It was on the west line of Kalorama street. That fence was removed along in 1910. I ordered the work done. I ordered the fence on the Sudden side of the street and on the city side of the street put together south of the Southern Pacific right of way.'' But while it is thus proved that a fence was placed at or near the middle of the street, on the order of a member of the board of trustees of the city, in the year 1910, this does not prove that the city itself acting by its board of trustees or any competent authority, abandoned the street. **[12]** If the evidence is sufficient to prove that the street had become established by adverse use prior to 1910, it did not cease to become a street merely because obstructions were then placed therein by city employees or officers not legally authorized so to do.

The witness Robert C. Sudden, son of the Captain Sudden who formerly owned block 21, gave testimony which locates the fence on the east line of the alleged Kalorama Street. ''We had a right of way fence on the west line of our land, that would be the east line of Kalorama street. That fence was there at the time the railroad came through.'' This indicates that Captain Sudden maintained a fence line along this east front line, notwithstanding that the description of the land in his deed included the east half of the street. On cross-examination, this testimony was somewhat weakened by the admission by the witness that he could not swear to the fact whether the fence was on the line or not, and by his statement that ''our westerly line fence was supposed to be on the westerly line of the tract of land described in the deed to my father.'' But he also said that the city's fence on the other side ''was supposed to be sixty feet from the west line running north and south.'' He also said that ''our fence went down to the bluff, and the point where we left Kalorama street to go to the beach was, I suppose, not over two hundred feet from the edge of the present bluff.''

[13]   Counsel for appellant have referred to numerous decisions holding that in order to establish a public road by adverse use, the use must have been adverse to the rights of the owner, open, notorious and hostile, continuous and exclusive, and must have continued for the statutory period, which in this state is five years.   Among these cited cases are *Schwerdtle* v. *County of Placer,* 108 Cal. 589 [41 Pac. 448] ; *Coburn* v. *San Mateo County,* 75 Fed. 520; *Hihn Co.* v. *City of Santa Cruz,* 170 Cal. 436 [150 Pac. 62] ; *San Diego* v. *Hall,* 180 Cal. 165, 168 [179 Pac. 889].   Also, see Elliott on Roads and Streets, 3d ed., sec. 194.

Accepting these authorities as correct statements of the law, we are of the opinion that the evidence is sufficient to sustain the court's findings, under which the adverse use of the land in question for street purposes was sufficient to comply with the law as thus established.

Counsel for appellants further contend that the people are estopped to maintain this action for the reason that if the public ever did claim the right now asserted, that claim never was so open and unequivocal as to charge the owner of the property with notice; that the city of Ventura itself was unaware of that claim, but, on the contrary, it has always exercised proprietary rights in the fee on its half of the street, so called, and as the agent of the public is estopped now from denying its proprietorship and a like proprietorship in these appellants in the adjacent half of the street, so called.   [14]   We do not think that the relocation of the fences, placing them down the center of the street in the manner to which we have referred, or any other facts in the record are sufficient to establish this claim of estoppel.

The judgment is affirmed.

Houser, J., and Curtis, J., concurred.