CHARLES A. SMITH AND NORA LEE SMITH, APPELLANTS v. CITY OF HOLLISTER, RESPONDENT.—238 SW (2) 457.

Springfield Court of Appeals.   March 30. 1951.

*Lincoln, Lincoln, Haseltine & Forehand, Harold T. Lincoln, Horace S. Haseltine* for Appellant.

*Robert L. Gideon,* for Hollister, Respondent.

*Douglas Mahnkey,* for Don Sutherland, member of City Council.

VANDEVENTER, P. J.—From a judgment for defendant in an injunction proceeding, plaintiffs appealed.

The petition states that the plaintiffs are owners of Beach Front Subdivision of Plot No. 5 of the Second Addition to Hollister, Missouri; that the defendant is an incorporated city of the fourth class; that plaintiffs have erected on the above described real estate valuable improvements consisting of cabins, dwellings and houses forming what is known as "Smith's Camp". That in addition thereto, they have planted many shade trees, shrubs and grass and dug a well, all of which has been done over a period of many years last past. That defendant, through its agents and servants, is threatening to enter upon said premises, has served notice upon plaintiffs that it proposes to do so and that if permitted to so enter, it threatens and will cause irreparable and immediate injury to the building, lands, trees and grass of plaintiffs unless restrained by an order of the court. That no adequate remedy can be afforded plaintiffs by action for damages.

In its answer, defendant admitted that plaintiffs were the owners of the land described in their petition with the exception of certain alleys and streets, which, it was alleged, belonged to the defendant; denied that plaintiffs had erected houses, cabins and other valuable improvements on the property described, denied that it was threatening to enter upon the premises of plaintiffs but averred "that they as city officials and the city acting within its corporate powers only sought to grade and improve one or more of the city streets in the said subdivision." It denied that such grading would injure plaintiffs but asserted that it would be for the public good.

It was then alleged that the plaintiffs were estopped from denying the existence of said streets for the reason that on the 24th day of July, 1914, the Wm. H. Johnson Timber and Realty Company had the tract of land in question subdivided, laid out in lots, plots, streets, ways and alleys and that a plat thereof was duly dedicated and recorded on the 24th day of August, 1914; that it was dedicated as Beach Front Subdivision of Plot 5 of the Second Addition to the Town of Hollister; that by said dedication, the streets, ways and alleys became public ways and since that date have been held in fee by the city of Hollister.

That on the second day of August, 1915, the Johnson Timber and Realty Company subdivided part of said land and called it First Bungalow Addition and the same was recorded in the recorder's office, and

that in said plat recognized all the streets, ways and alleys of Beach Front Addition.

Furthermore, that on the 29th day of September, 1915, said Wm. H. Johnson Timber and Realty Company filed another plat in the recorder's office of Taney County called the Second Bungalow Addition, that the same was duly recorded and in it recognized the said streets, ways and alleys of Beach Front Addition.

It was also alleged that on or about the 1st day of November, 1947, plaintiffs filed a petition in the County Court of Taney County, Missouri, under oath, praying the County Court to vacate the streets in the said Beach Front and Bungalow subdivisions and by said action, recognized the streets as being public streets and ways.

The answer further alleged that the city of Hollister had expended money on said ways and streets by constructing and laying water mains along some of them and that the city of Hollister now had fee simple title to said streets and ways by dedication.

Plaintiffs' reply denied the existence of any streets or alleys on said land belonging to defendant or to the public or the dedication of any such; denied that the city had any streets in Plot 5 and asserted that the employees of the defendant city had no right to enter said land for the purpose of grading; denied that any such grading would be for the public good and denied that the defendant or the public had any right, title, interest or estate in the land. Plaintiffs specifically denied that there had ever been any statutory dedication of Plot 5 and that the streets and alleys designated on the Plot ever became public ways. Denied that the plats were ever recorded according to statute because the plats show upon their face that they were never approved by the common council of the city of Hollister; denied that there had ever been any acceptance by the city of Hollister of any of the aforesaid plats. Plaintiffs assert in their reply that no streets or alleys have ever been opened, maintained, supervised, improved or controlled by the city on the land in question and that there had been no user by the public of any of the so-called streets or alleys and denied that they are estopped from pursuing this action.

Plaintiffs further denied that they were being supplied with water from any city water main but that if the city has any water mains across said land, it merely has a right of way for that purpose alone.

Upon these issues, the case went to trial. The following facts were stipulated by the parties: No streets or alleys had ever been maintained in Plot No. 5 by the city of Hollister and there had been no public user except that employees of the city has crossed the plot for the purpose of reading water meters. The city's water main commences at the east end of Fisherman's Court "a private street so designated by the plat and continues in a westerly direction to a point which is referred to in the purported plat as Sun Perch Alley, thence in a northerly direction along Sun Perch Alley to a point approximately in

the center of the street designated in said purported plat as Bather's Trail, at which point the main divides, one portion proceeding in a westerly direction across Turkey Creek and the other forks to the east and thence continues along Sun Perch Alley across the north portion of the entire tract and to the Y. M. C. A. Camp. The other branch goes across Turkey Creek to Mrs. Ford's Camp, fire hydrants and various other places.''

The defendant city had not by ordinance approved any of the three plats of Plot 5 and the town council had not endorsed its approval on either as provided by Section 12,805 R. S. Mo. 1939 (now 445.030 R. S. Mo. 1949) neither had the defendant city, by ordinance, acknowledged any of the property in Plot 5. From the years 1916 to 1947, inclusive, city and county taxes were assessed and paid on Plot 5 under the description ''Beach Front Bungalow Subdivision' and in 1948 and 1949, it was merely assessed as ''Plot 5''.

Plaintiffs owned all of Plot 5 ''aside from the claims of defendant City * *.'' In 1909, in the second addition to the town of Hollister, Plot 5 was shown but was not subdivided into streets and alleys. In the year 1947, plaintiffs instituted a suit in the County Court of Taney County asking the County Court to vacate and close all the proposed streets on Beach Front and Bungalow Subdivision of Plot 5 of the city of Hollister and the court made an order so vacating the same, but later the defendant city instituted a suit in the circuit court of Taney County and secured a decree setting the order of the county court aside ''for the reason of insufficient notices and proper parties have been notified.''

The defendant offered in evidence the three plats above referred to, to-wit: (1) Beach Front Subdivision, (2) First Bungalow Subdivision (3) Second Bungalow Subdivision. They were objected to by the plaintiffs for the reason that they did not bear the endorsement of the city council of defendant but they were admitted in evidence.

The plat known as ''Beach Front Subdivision'' shows a tract of land lying southeast of Turkey Creek. Through the center, running from southwest to northeast is an unnamed alley. Across the center of the tract from southeast to northwest is a street called Bather's Trail. The highway (Lake Drive) runs along the southeast side of the tract and between the northwest side and Turkey Creek is Beach Front and Beach Front Reserve. On the northeast end of the tract appears Sleepy Hollow Street. Those are all the streets or alleys that appear on this plat which was filed October 15, 1915. It recites that the streets and alleys appearing thereon ''are hereby relinquished to the public forever.''

The next plat was First Bungalow Subdivision, filed on the 5th day of August, 1915 and covers only the southeast half of what was originally platted as Beach Front Subdivision and upon it appears, parallel to Bather's Trail, streets named Angler's Court and Fisherman's

Court. They run in a southeast to northwest direction, Angler's Court northeast and Fisherman's Court southwest of Bather's Trail. This plat states that Fisherman's Court and Angler's Court "are hereby set apart and dedicated as private driveways for the exclusive use and benefit of lots and subdivisions abutting thereon."

The plat of Second Bungalow Subdivision filed in the Recorder's Office, September 9, 1915, is a complete plat of the entire tract. It shows streets running across the tract from the southeast to the northwest, beginning at the southwest end as Fisherman's Court, Bather's Trail, Angler's Court, Minnow Lane and Sleepy Hollow. Two streets run from the northeast to the southwest known as Sun Perch Alley and Beach Front Reserve. Along the southeast side is Lake Drive, now U. S. Highway 65. Beach Front Reserve lies between the platted lots and Turkey Creek on the northwest side of the tract. This plat also designates the lots that make up Fisherman's Court, Angler's Court and Minnow Lane respectively, as marked on this plat and recites that they "are hereby set apart and dedicated as private driveways for the exclusive use and benefit of lots and subdivision thereof abutting thereon." The acknowledgment on this plat was dated September 29, 1915, and it was marked filed September 9, 1915.

Defendant offered in evidence a warranty deed of Nina C. Wilkerson to C. A. Smith dated January 2, 1942 to part of the land in question with the description of lots and blocks according to "Second Bungalow Subdivision of Second Addition in Second Addition Beach Front Subdivision of Plot 5 of Second Addition to Hollister, Missouri." Also certain lots and blocks appearing in "First Bungalow Subdivision of Beach Front Subdivision of Plot 5 * *."

Plaintiffs offered in evidence a corporate deed from the Wm. H. Johnson Timber and Realty Company to one A. F. James, dated the third day of April, 1928, in which there was reference to lots and blocks in Beach Front Subdivision and which deed purported to convey a strip of land extending across Plot 5 and included in which were portions of Sun Perch Alley and Beach Front Reserve. Plaintiffs also offered in evidence a general warranty deed dated April 13, 1928 from Freda House to A. F. James, deeding some of the land in Plot 5 described by division lots and blocks and referring to Beach Front Subdivision of Plot 5 of the Second Addition of the town of Hollister. This also deeded parts of what was platted as Sun Perch Alley and Beach Front Reserve. Plaintiff also offered in evidence a quit claim deed dated the 24th day of October, 1949 from F. W. Morey to A. F. James and wife in which was described portions of Plot 5 by subdivision lots and blocks in which were also included some of the land platted as streets.

Photographs of Beach Front, the east end of Minnow Lane, facing on the highway, Sleepy Hollow, the entrance to Smith's Camp, which was at the east end of Bather's Trail Street, were introduced in evidence.

Nora Lee Smith, one of the plaintiffs, testified that she and her husband were the owners of all of Plot 5 and moved onto the land in 1929. In the middle of what was platted as Sun Perch Alley, at the Sleepy Hollow end, is a building with four rooms, a shower and a rest room. Nina Wilkerson had a home in the middle of the other end of the platted alley. Witness and her husband became the owners of that portion about 1938. The whole of Plot 5 had been fenced for 10 or 12 years. A fence was across Bather's Trail parallel with Sun Perch Alley. Signs were put up by plaintiffs, and kept for a number of years, saying "Keep Off", "No Trespassing", etc. The fence across platted Bather's Trail has been there for 10 or 12 years.

The area (north) west of Sun Perch Alley (about half of the entire tract in area) had been used for pasturing cattle and gardening and some of it for a corn field. A large sign showing, "Entrance to Smith's Camp" is in the east entrance to Bather's Trail, and had been there for many years. Mrs. Smith testified that a water main went across the tract to the Y. M. C. A. Camp and to Mrs. Ford's Camp, that she had no objection to men going across to repair mains but did object to tearing up driveways and repairing streets, some of which plaintiffs had graded themselves.

The suit in the County Court to vacate the streets and alleys was brought when defendant city's agents and employees threatened to grade a street down through plaintiffs' land. She did not get water from the city at the time of the trial but had at one time.

The witnesses for the defendant city admitted that they had attempted to make a survey of plaintiffs' land in order to grade a street over to the Beach following what was platted as Bather's Trail and it was then that this injunction suit was filed. Preparatory to laying the water mains in question, a survey was made in 1931, but the completion and laying of the mains was sometime later, "in the early thirties". The "street" platted as "Sleepy Hollow" is a low hollow having large sycamore trees in it, fifty or one hundred years of age. The plaintiffs had been served by the city with water for a short time during 1948. The city employees had gone onto the land at one time when they thought they had a water leak in the main, had dug it out and repaired it and filled up the holes with a grader as best they could. Their purpose in proposing to open and grade the street across Plot 5 was to obtain additional access for the public to the water front of the Lake and Turkey Creek for fishing. The evidence further showed that the people of Hollister had a mass meeting and suggested that this street be opened.

This is an equity case and must be considered de novo by this court and we should render such decree as we think should have been rendered by the Chancellor below. Beery v. Linstrom (Mo. App.) 228 S. W. (2) 814. Handlan v. Handlan (Mo. Sup.) 232 S. W. (2) 944. Rucker v. Fowler (Mo. App.) 233 S. W. (2) 809.

Where there are disputed questions of fact, great deference is given to the advantage the Chancellor had in hearing the testimony and in being able to observe the witnesses as they testified. But here, there is very little conflict, if any, in the facts.

The first question arising is, did The Wm. H. Johnson Timber and Realty Company dedicate Plot 5 according to statute? To be a statutory dedication under Sec. 12,805 Mo. R. S. A., (Now 445.030 R. S. Mo. 1949) the plat must be acknowledged by the proprietor, in this case The Wm. H. Johnson Timber and Realty Company, and recorded in the office of the Recorder of Deeds in the county in which it is situated. Undoubtedly, this statute means that it must be legally recorded and not a surreptitious or inadvertent recordation. The statute further provides that no such plat shall be recorded until the same has been submitted to and approved by the common council of the city in which the land is located, by an ordinance duly passed and approved by the mayor, and such approval shall be endorsed upon the plat itself, under the hand of the clerk and the seal of said city. Even then, it cannot be *legally* recorded until all taxes against the land have been paid. The three plats in question do not bear such approval on their face and there is no evidence that they were actually approved by ordinance or otherwise. The fact that they were inadvertently recorded, without a compliance with the statute, does not give them vitality and life as completed dedications. If it did, then the statute could easily be circumvented. It was not a statutory dedication. City of Caruthersville v. Huffman, 262 Mo. 367, 171 S. W. 323.

The next question is, was it a common law dedication? A defective attempt to dedicate under the statute may upon acceptance and user by the public be effective as a common law dedication. State v. De Vall 157 Mo. App. 587, 138 S. W. 667. See also Anno. 63 A. L. R. 667. In Connell v. Jersey Realty and Investment Co. 352 Mo. 1122, 180 S. W. (2) 49, the Supreme Court said:

"We deduce from the law that in order to establish a common law dedication it must be shown: (1) That the owner, by his unequivocal action, intended to dedicate to public use; (2) that the land so dedicated must be accepted by the public; and (3) that land so dedicated must be used by the public. A common law dedication, sometimes termed implied dedication, operates not as a grant, but on the principle of estoppel."

See also: Haertlein et al. v. Rubin (Mo. Sup.) 195 S. W. (2) 480. Putnam v. Walker, 37 Mo. 600.

There can be no question but what the original owner of this tract of land intended to dedicate the streets shown on the plat of Beach Front Subdivision to the public. He plainly says so on the plat. But this merely amounted to an offer to do so and before it became a completed dedication, it must have been accepted by the public and furthermore, it must have been used by the public, such user also being

evidence of acceptance. Baker v. Vanderburg 99 Mo. 378, 12 S. W. 462, 26 C. J. S. Sec. 37, page 99. The evidence shows that the first plat was filed on the 24th day of August, 1914. There is no evidence that it ever was accepted by the public in any manner. At that time, from the evidence, the land was little less than a jungle. On the 2nd day of August, 1915, nearly a year later, another plat was filed marking off some of the already platted lots into subdivisions and creating some more streets (called courts) which were strictly limited, by the provisions of the plat, to private use by abutting land owners. There was no acceptance by the public of this plat. Then on September 9, 1915, a third plat was filed containing all the platted streets and alleys of the first two and one additional and this third plat specifically limited some of the platted streets to the exclusive use and benefit of abutting land owners. Now the evidence shows that for more than 15 years, there was no action of any kind taken by the city of Hollister or by the public that would in the remotest way indicate that they had accepted the offer of dedication of The Wm. H. Johnson Timber and Realty Company. Sometime in the early 1930's, the city of Hollister installed a water main across the land but this main did not enter Plot 5 on the street claimed to have been dedicated by the Beach Front Subdivision plat but entered and followed along Fisherman's Court about 250 feet to Sun Perch Alley and after proceeding in a northeasterly direction up that alley for 150 feet, it forked, the northeast branch going to the Y. M. C. A. tract of land and the northwest branch proceeding on across the land to the cottages and homes of other persons not living on the land in controversy. Apparently this water main was installed, not for the benefit of anyone on Plot 5, but was merely built across that land as a matter of convenience to service others elsewhere. This would not constitute an acceptance. Summerville v. Duke Power Co. 115 Fed. (2) 440. The record shows at the time of the trial that no one on Plot 5 was obtaining water from the city and had never done so except for a short period in 1948. In our opinion, the installation of this water main in no way indicates an acceptance by the public of the plats filed some 15 years earlier. No other action by anyone that could be construed as an acceptance of the offer to dedicate appears until more than 15 years after the installation of the water main, and about 33 years after the filing of the plats. There is some evidence that employees of the city would cross the tract to read water meters, through which water was supplied to other customers, but for no other reason.

In 1947, employees of the water company entered upon the land for the purpose of discovering a leak in the mains. This was found and repaired and it was not until 1949, 35 years after the first plat was filed, that the city ever indicated that it intended on behalf of the public, to accept the offer of the original owner. Then the employees of the city of Hollister appeared on the premises declaring that they in-

tended to grade a street down through the center of plaintiffs' property from the highway to Turkey Creek and the lake shore. There is no question but what in 1914, The Wm. H. Johnson Timber and Realty Company would have dedicated Bather's Trail, Beach Front Reserve, Sleepy Hollow and an alley for public use, if the public had accepted it.

The Wm. H. Johnson Timber and Realty Company has long since ceased to own any of the lands platted and when it conveyed the land before there was any acceptance of its offer to dedicate the streets and alleys to the public, such conveyance was a withdrawal of its offer to dedicate. Rosenberger v. Miller et al. 61 Mo. App. 422.

It could not be accepted after its withdrawal. Price v. Town of Breckenridge, 92 Mo. 378, 5 S. W. 20.

On the plat of First Bungalow Subdivision, we find this notation, "This was vacated, and is now Plot 5, Second Addition to Hollister." The deeds introduced in evidence further show that the offer to dedicate was abandoned or vacated by the Realty Company.

Defendant's Exhibit A, which was a deed dated January 2, 1942, conveyed lot 4 of Block 1, and lot 5 of Block 3 to plaintiff, C. A. Smith and those two lots had in the plats been designated, many years before, as Fisherman's Court.

Plaintiffs' Exhibit 7, which was a corporate deed, dated April 3, 1928, deeded a strip of land entirely across the tract from the highway to Turkey Creek, which included part of Sun Perch Alley and Beach Front Reserve as platted. The evidence clearly shows to us that the public never accepted the offer of the original owner, The Wm. H. Johnson Timber and Realty Company, that that offer was later withdrawn or revoked and the land was deeded as if the plats had never been made and there had been no offer to dedicate. Furthermore, it is in evidence that at the present time (photographic exhibits) that part of this land is now virtually jungle, that buildings have been erected in the streets and alleys, once sought to be dedicated. To permit the city now to enter upon plaintiffs' land and grade the streets so the public would have an easy way to go to the lake shore to swim, would work an irreparable injury upon the plaintiffs.

It is true that plaintiffs sought to obtain a judicial vacation of the platted streets and alleys but they only did this as a precautionary measure and after the city was threatening to enter upon their premises and injury their property. This was later set aside by the circuit court, not upon the merits, but because there was a defect of parties in the county court proceeding. It is true that the deeds offered in evidence convey portions of the property, describing the land according to the plats, but coupled with the fact that in the same deeds there was conveyed part of the very streets and alleys which the Realty Company had formerly attempted to dedicate, does not indicate a continuance of the original offer of dedication, but rather that the plats

were used merely as convenience in description. Hayes v. Kansas City 242 S. W. 411, 294 No. 655. The acts of bringing the suit to vacate and conveying by using the descriptions on the plats in no wise estopped these plaintiffs from asserting their rights in action. None of the elements of estoppel exist. (See Johnson v. Ferguson, 329 Mo. 363, 44 S. W. (2) 650.)

It has been held, upon the theory of estoppel, that where land is sold according to the description of lots, streets and alleys shown upon a plat, the purchasers acquire, by "private dedication" the right to the ordinary use of all the streets and alleys shown upon the plat necessary to the complete enjoyment of their property but the general public acquires no right therein. Rose et al. v. Fisher et al., 130 W. Va. 53, 172 A. L. R. 160, 42 S. E. (2) 249. Manning v. House, 211 Ala. 570, 100 So. 772. People v. Southern Pac. R. R. Co. 68 Cal. App. 153, 228 Pac. 726. But here no private owner is asserting estoppel. Plaintiffs own it all.

It is our opinion, from the evidence, that the plaintiffs were entitled to have the city of Hollister and its employees restrained from interfering with their property.

We have carefully read and considered the cases cited by respondents, but none of them involve the same or similar facts as are before us. Some of them refer to dedications prior to the enactment of the statute requiring the approval of the city council before recording. Others show either an approval by the council or acceptance and user by the public. Here, the plain provisions of the statute were ignored and there was no acceptance or user by the public.

The judgment of the trial court should be reversed and the cause remanded with directions to enter a judgment for the plaintiffs. It is so ordered. *Blair, J.*, and *McDowell, J.*, concur.